791 So.2d 1246 (2001)
STATE of Florida, Appellant,
v.
Tommy Perry MOORE, Appellee.
No. 1D00-3812.
District Court of Appeal of Florida, First District.
August 21, 2001.
*1247 Robert A. Butterworth, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellant.
Robert Augustus Harper and Jason Michael Savitz of Robert Augustus Harper Law Firm, P.A., Tallahassee, for Appellee.
BARFIELD, J.
The state appeals the trial court's order suppressing drugs and appellee's statements, both of which were obtained as the result of the stop by police of appellee's vehicle. Concluding that the trial court may have based its suppression ruling on a misunderstanding of the law governing the Fourth Amendment prohibition against unreasonable seizures, we reverse the order and remand for factual findings.
In reviewing an order on a motion to suppress, the court considers the evidence presented at the suppression hearing in the light most favorable to sustaining the trial court's ruling. See San Martin v. State, 705 So.2d 1337 (Fla.1997), cert. denied, San Martin v. Florida, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); State v. Butler, 655 So.2d 1123 (Fla.1995); McNamara v. State, 357 So.2d 410 (Fla.1978). While the reviewing court is required to accept the trial court's determination of the historical facts surrounding the challenged seizure and/or search, it reviews de novo the application of the law to the historical facts. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Porter v. State, 765 So.2d 76 (Fla. 4th DCA 2000), *1248 review denied, No. SC00-1980, 790 So.2d 1107 (Fla. April 24, 2001).
At the hearing on the motion to suppress the evidence, the only witnesses were two police officers. The officer who stopped the vehicle testified that he did so because he believed the windows were illegally tinted[1] when he could not "make out the occupant" in the vehicle, but he admitted that he would have stopped any vehicle matching the description he had been given, "based on the probable cause that I was getting from another sergeant, another law-enforcement officer."
According to the testimony of the witnesses, the officer who stopped the vehicle was part of a surveillance set up near a motel as the result of detailed and consistent information furnished to police in separate interviews of two confidential informants. The informants had told police that an "older" black man in his 40s or 50s named Tommy Moore was delivering cocaine each day at specified hours to a 30-year-old black woman named Oricka Scott at room 317 of the motel, and that Moore would be driving one of two described SUV vehicles, both of which had dark tinted windows. Police confirmed that room 317 was registered to Oricka Scott, and a search of police records disclosed a Tommy Moore who was black, was born in 1952, and had a history of drug related offenses. The officers then set up a surveillance, during the times specified by the informants, of the roads leading into the motel. Less than an hour after the surveillance began, a vehicle matching one of the descriptions given to police by the informants was stopped. The driver was appellee, and his driver's license confirmed that he was the Tommy Moore they were seeking. Within minutes of the stop, Oricka Scott came out of the motel and told police that the driver of the stopped vehicle was her boyfriend. Appellee confirmed that he had been going to see her. He was detained for approximately 20 minutes until the narcotics investigator arrived on the scene, whereupon the officer who had stopped the vehicle turned appellee's license over to the narcotics investigator without writing a citation for the window tinting. After the drug dog alerted to the vehicle, it was searched and more than 200 grams of cocaine were seized. In a subsequent consent search of appellee's residence, police seized more than 300 grams of cocaine.
Appellee sought to suppress the seized cocaine and also his incriminating statements to police at the time of the stop, on the grounds that the vehicle "was stopped based solely on unfounded, untested, inarticulable hunches and suspicion," that "there was no probable cause for the initial stop," and that the stop "was a pretext, and the continued detention of Mr. Moore was illegal thereby resulting in an illegal search and seizure." At the hearing on the motion to suppress, defense counsel preliminarily asserted that "the stop was a pretextual stop because of the fact that he was initially stopped for an alleged window tint, which resulted in an illegal detention" and that if the court found Moore was illegally detained, "everything that flows from that would be evidence that would be suppressed." After the officers testified, defense counsel argued that "it was a pretextual stop because of the fact that they were planning to stop Mr. Moore regardless," that the window tint "was just a red herring" and Moore was not given a citation *1249 or warning, that Moore was illegally detained beyond the time required to issue a citation, and that the officers did not have any corroboration of the untested informants' information before the stop, beyond the description of the vehicle. The order suppressing the evidence stated only "that the traffic stop was pretextual and that the detention of the Defendant was illegal." There are several possible explanations for this ruling.
We preliminarily note that in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that generally, a traffic stop is reasonable under the Fourth Amendment "where the police have probable cause to believe a traffic infraction has occurred," and that the officer's subjective intentions play no role in the Fourth Amendment analysis. In Holland v. State, 696 So.2d 757 (Fla.1997), the Florida Supreme Court receded from its prior decision in State v. Daniel, 665 So.2d 1040 (Fla.1995), in light of the Whren decision, finding that the United States Supreme Court had "rejected the reasonable officer test in favor of a strict objective test which asks only whether any probable cause for the stop existed" and that in determining whether to reverse a suppression order, Florida courts "are constrained to review the record under the objective test of Whren." 696 So.2d at 759.
Reviewing the record under the objective test of Whren, and assuming for the purpose of Fourth Amendment analysis that the trial judge accepted as credible the testimony of both officers, we find that the stop of the vehicle would have been justified by the officer's observation of the dark tinted windows, which gave him probable cause to believe that they were illegally tinted. The officer was then justified in detaining the driver only for the time reasonably necessary to issue a citation or warning, or to determine that the window tint was in fact legal, unless he had a reasonable suspicion of criminal activity. See Thomas v. State, 614 So.2d 468 (Fla. 1993); Cresswell v. State, 564 So.2d 480 (Fla.1990); State v. Banfield, 614 So.2d 551 (Fla. 2d DCA), review denied, Banfield v. State, 626 So.2d 203 (Fla.1993). The officer's testimony that he stopped the vehicle because the windows appeared to be illegally tinted was unrebutted, and there is no indication in this record that the trial judge did not find his testimony credible.
Furthermore, the unrebutted testimony of the testifying officers demonstrated that they had at least a reasonable suspicion, based upon detailed and consistent information from two separate confidential sources and partial corroboration of that information prior to the stop, that the vehicle which fit the description given by the informants and arrived at the surveillance location during the specific time period described by the informants was involved in criminal drug trafficking activity. See State v. Butler, 655 So.2d 1123 (Fla.1995); Freeman v. State, 559 So.2d 295 (Fla. 1st DCA 1990). A reasonable suspicion of criminal activity justifies a temporary stop of the vehicle and detention of the driver for a reasonable investigation, including ascertaining the driver's identification. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Popple v. State, 626 So.2d 185 (Fla.1993).
When, within a few minutes of the stop, the officer determined that the driver was the suspect described by the informants, and further corroborated the information that the suspect was going to see Oricka Scott in room 317 of the motel, he had probable cause to believe that appellee was delivering cocaine, which justified the search of his vehicle. See State v. Banfield, which involved a similar progression, *1250 under a different set of facts, from valid traffic stop to reasonable suspicion of criminal activity to probable cause for arrest and search.
The above analysis assumes that the trial judge accepted as credible the testimony of both officers, but there is no indication in this record regarding the trial judge's assessment of the officers' credibility. In neither the suppression hearing nor the challenged order did the judge make any factual findings, nor did she indicate her rationale for granting the motion to suppress, other than the conclusory statement previously quoted.
It is possible that the trial judge believed the officers' testimony concerning the information supplied by the confidential informants, the partial corroboration of that information, the surveillance, the stop of appellee's vehicle, and the events subsequent to the stop, and that she also believed the officer's testimony concerning his belief that the vehicle's windows were illegally tinted, but that she misconstrued the current law concerning stops based upon traffic infractions in which police also have a suspicion of criminal activity (i.e., she failed to follow Whren and Holland). In that event, the order would be reversible as a matter of law, because the stop was independently justified by the officer's probable cause to believe that the driver was committing a traffic infraction, and by the officer's reasonable suspicion that the vehicle was involved in criminal drug trafficking activity, which ripened to probable cause within a few minutes of the stop.
It is also possible that the order's "pretextual" language was intended to indicate that, although the trial judge believed the officers' testimony concerning the events leading up to the surveillance and the events subsequent to the stop, she did not believe the officer when he said that he stopped appellee's vehicle because he believed its windows were illegally tinted. In that event, the order would be reversible as a matter of law because the stop was independently justified by the officer's reasonable suspicion of criminal activity, which ripened to probable cause within a few minutes of the stop.
Although it appears to us unlikely in view of the officers' unrebutted, unimpeached, and consistent testimony, it is also possible that the suppression order was based upon the trial judge's determination that significant portions of the officers' testimony regarding both bases for the stop were not credible. It was the prerogative of the trial judge, as the fact finder in the hearing on the motion to suppress, to assess the credibility of the officer witnesses and to determined what happened before and during this traffic stop. See State v. Shaw, 784 So.2d 529 (Fla. 1st DCA 2001). But see State v. Fernandez, 526 So.2d 192 (Fla. 3d DCA), cause dismissed, Fernandez v. State, 531 So.2d 1352 (Fla.1988), and the cases cited therein.
We find persuasive the reasoning of State v. Shaw, which is factually and procedurally somewhat similar to the case at issue. Therefore, we REVERSE the order suppressing the evidence and REMAND the case to the trial court for further proceedings, including factual findings and a redetermination, in the light of those factual findings, of the legal issues raised in the motion to suppress.
WOLF and LEWIS, JJ., CONCUR.
NOTES
[1] Sections 316.2951-316.2956, Florida Statutes (1999), provide that it is a noncriminal traffic infraction to operate a motor vehicle on which sunscreening material has been applied to the side or rear windows which has the effect of altering the windows' transparency beyond specified limits.