901 So.2d 155 (2005)
Tristan HILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-5346.
District Court of Appeal of Florida, Second District.
February 16, 2005.
*156 James Marion Moorman, Public Defender, and Anthony C. Musto, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellee.
EN BANC
WHATLEY, Judge.
Tristan Hilton pleaded no contest to possession of marijuana after the trial court denied his dispositive motion to suppress. The motion alleged that the stop of Hilton's car was improper, and therefore, any evidence obtained as a result of the stop should be suppressed. Because the trial court properly denied the motion to suppress, we affirm Hilton's conviction.
Law enforcement officers stopped Hilton's car after noticing that it had a cracked windshield. The crack was approximately seven inches in length and was located in the upper right-hand corner on the passenger side. The officers testified at the suppression hearing that they merely intended to issue Hilton a traffic citation for the cracked windshield. Upon stopping the vehicle, however, the officers observed a gun in plain view and the resulting search of the car produced more than forty bags of marijuana.
We conclude that the officers lawfully stopped Hilton's car based on the cracked windshield, because the equipment violation *157 was a noncriminal traffic infraction. Section 316.2952, Florida Statutes (2001), provides that a windshield is required on every motor vehicle and that a violation of this statute is a noncriminal traffic infraction. Section 316.610(1), expressly gives a police officer the authority to require the driver of a vehicle to stop and submit the vehicle to an inspection if the officer has reasonable cause to believe that the vehicle is "unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair." (Emphasis added.)
Although the above two statutes do not specify under what circumstances an officer may stop a car to perform a safety inspection of a broken windshield, we conclude that an officer may stop a vehicle with a visibly cracked windshield regardless of whether the crack creates any immediate hazard. We first note that section 316.610(1) permits a stop when a vehicle is unsafe or when a vehicle has equipment that is not in proper repair. Thus, the legislature clearly did not limit the authority of the police to only those cases in which the equipment created some immediate or heightened level of risk. We agree with the dissent that the first, unnumbered paragraph of section 316.610 is also relevant to our analysis and believe that the language supports our position. That section provides:
It is a violation of this chapter for any person to drive ... any vehicle ... which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter....
(Emphasis added.) Because a windshield is required by this chapter, § 316.2952, it is a violation of this section to drive a vehicle with a windshield that is not in proper condition and adjustment.
Second, section 316.610(2) addresses stops for equipment violations which are not unduly hazardous:
In the event the vehicle is found to be in unsafe condition or any required part or equipment is not present or is not in proper repair and adjustment, and the continued operation would probably present an unduly hazardous operating condition, the officer may require the vehicle to be immediately repaired or removed from use. However, if continuous operation would not present unduly hazardous operating conditions, that is, in the case of equipment defects such as tailpipes, mufflers, windshield wipers, marginally worn tires, the officer shall give written notice to require proper repair and adjustment of same within 48 hours, excluding Sunday.
(Emphasis added.)
This statute gives law enforcement the authority to require the vehicle to be immediately repaired or removed from use if the equipment violation creates an unduly hazardous operating condition. However, if the equipment violation does not create an unduly hazardous operating condition, the officer must give written notice to repair the vehicle. By necessary implication, the stop of a vehicle is proper even if the equipment violation does not create an unduly hazardous operating condition.
Third, we conclude that the power extended to the police in section 316.610(1) does not violate the Fourth Amendment. It is worth emphasizing that the legislature did not create this statute as a method of criminal investigation. This statute was intended to create a noncriminal safety stop to permit police to perform a quick vehicle-specific safety inspection that is cheaper and less intrusive, and arguably *158 more effective, than methods of mandatory, annual vehicle inspection. It was reasonable for the legislature to require all automobiles to have certain equipment and for that equipment to be in proper repair. Owners and operators of cars are expected to know these legal requirements and should not expect their sense of personal privacy to prevent the police from briefly stopping a car that reasonably appears to have an equipment violation.
In Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that the temporary detention of a motorist is reasonable under the Fourth Amendment where police have probable cause to believe that a civil traffic violation has occurred.[1] The Court held that the "[s]ubjective intentions [of the officers involved] play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813, 116 S.Ct. 1769.
Petitioners urge as an extraordinary factor in this case that the "multitude of applicable traffic and equipment regulations" is so large and so difficult to obey perfectly that virtually everyone is guilty of violation, permitting the police to single out almost whomever they wish for a stop. But we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement. And even if we could identify such exorbitant codes, we do not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement.
Id. at 818-19, 116 S.Ct. 1769 (emphasis added).
In Smith v. State, 687 So.2d 875 (Fla. 2d DCA 1997), law enforcement officers, who were working felony drug interdiction, stopped a truck for having a dim tag light. Smith was a passenger in the truck. Because the driver seemed exceptionally nervous, the officer asked him for consent to search the truck and the driver consented. Thereafter, the officer's K-9 dog conducted a search of the truck which led to the discovery of methamphetamine and marijuana. Smith moved to suppress evidence discovered as a result of the stop, arguing that the stop was pretextual. Relying on Whren, this court held that the stop was reasonable because the officers had probable cause to believe that the truck had a dim tag light, even though the officers may have been looking for drug traffic that evening. Id. at 878; see State v. Snead, 707 So.2d 769, 770 (Fla. 2d DCA 1998) (holding that stop was reasonable where officer had probable cause to believe that appellee's taillight and brake light were inoperable); State v. Moore, 791 So.2d 1246 (Fla. 1st DCA 2001) (concluding that where police were conducting surveillance near motel based on informants' description of appellee, stop of appellee's auto was justified where officers had probable cause to believe his windows were illegally tinted, a noncriminal traffic infraction); State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001) (holding that stop of appellee's car was clearly lawful where car was pulling a trailer that had no taillights or license plate in violation of section 316.610); Scott v. State, 710 So.2d 1378 (Fla. 5th DCA 1998) (concluding that officer had probable cause to stop appellant's car pursuant to *159 section 316.610(1) where turn signal on car was not operating properly).
We also note that it would not be practical to require a law enforcement officer to make a determination regarding the extent of a crack in a windshield until the vehicle is actually stopped. In United States v. Cashman, 216 F.3d 582 (7th Cir.2000), the appellee argued that the stop of his vehicle for a cracked windshield was improper because the windshield did not violate the state law prohibiting an excessively cracked windshield, which was defined as a windshield with a crack that extends more than eight inches from the frame or a crack inside the windshield critical area. The court rejected this argument and held that the stop was proper:
The propriety of the traffic stop does not depend ... on whether Cashman was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for Trooper Spetz to believe that the windshield was cracked to an impermissible degree.
216 F.3d at 587.
Therefore, even if section 316.2952 or section 316.610 stated that a cracked windshield would be a traffic violation only if it created an unsafe condition, an officer may be reasonable in his or her belief that the crack met such criteria, even though an examination of the windshield after the stop revealed that the crack did not create an unsafe condition. "[T]he Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one." Cashman, 216 F.3d at 587.
This court has held that a vehicle stop for a cracked windshield is justified. Smith v. State, 735 So.2d 570, 571 (Fla. 2d DCA 1999) ("The vehicle in which Mr. Smith was riding was stopped for having a cracked windshield, a violation of Florida law.... Because the windshield was cracked, the vehicle's stop was justified."); see also Coleman v. State, 723 So.2d 387 (Fla. 2d DCA 1999) (noting that appellant conceded that traffic stop for cracked windshield was valid); K.G.M. v. State, 816 So.2d 748, 752 (Fla. 4th DCA 2002) (recognizing that initial stop for operating vehicle with cracked windshield was not disputed); Thomas v. State, 644 So.2d 597, 597 (Fla. 5th DCA 1994) ("Thomas was stopped for driving a vehicle with a cracked windshield, a non-criminal infraction, and was given a citation.") (footnote omitted).
Although not argued by the parties, we recognize that in Doctor v. State, 596 So.2d 442 (Fla.1992), the court held that the stop of the vehicle was improper where it was based on a crack in the taillight reflector. However, Doctor was decided prior to Whren, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. Also, in Doctor the vehicle was in compliance with the law, which required that a red light be visible from a distance of 1,000 feet, but the trooper was mistaken regarding the requirements of the law. Doctor did not involve a situation in which the law enforcement officer applied the correct law but later determined after closer inspection of the car that there was no violation. See Hilgeman v. State, 790 So.2d 485, 487 (Fla. 5th DCA 2001) ("Reasonable suspicion to seize or probable cause to arrest Hilgeman did not arise based on the officers' misapprehension of the law."). Additionally, we note that in Doctor, 596 So.2d at 447, the State urged the court to interpret this section to allow vehicle stops for malfunctioning equipment, "even if the equipment is not required by statute, poses no safety hazard, or otherwise violates no law." The court rejected this argument and noted that such an application of section 316.610 would permit police to stop a vehicle for a malfunctioning air conditioner or radio. *160 Id. In contrast, a windshield is required by statute. § 316.2952. Therefore, Doctor has no application to the present case, because Hilton's cracked windshield was a violation of Florida law, and the officers had probable cause to stop his car.
With all due respect to Judge Northcutt's dissent, we do not believe that we are misreading subsection 316.610(1). If Judge Northcutt is correct, a police officer simply cannot issue a written notice to repair a windshield with a seven-inch crack in the upper right-hand corner because the statutes do not define such a crack as an unsafe condition in the windshield, which we all agree is a statutorily required safety feature for any car on the highway. We conclude that the legislature was not required to detail the nature of each and every violation that warrants a notice to repair.
Likewise, if Judge Northcutt is correct in his interpretation of the Fourth Amendment, then section 316.610(1) would seem to be facially unconstitutional because it expressly permits a police officer to stop a car to perform a vehicle inspection based on reasonable cause to believe that the vehicle is unsafe, not equipped as required by law, or its equipment is not in proper adjustment or repair. We conclude that a statute that authorizes such a limited safety inspection stop when an officer reasonably believes the vehicle to be in violation of the above requirements does not violate the Fourth Amendment.
Because this issue affects the power of law enforcement throughout the state, we certify the following question as a matter of great public importance:
MAY A POLICE OFFICER CONSTITUTIONALLY CONDUCT A SAFETY INSPECTION STOP UNDER SECTION 316.610 AFTER THE OFFICER HAS OBSERVED A CRACKED WINDSHIELD, BUT BEFORE THE OFFICER HAS DETERMINED THE FULL EXTENT OF THE CRACK?
Affirmed.
ALTENBERND, C.J., and CASANUEVA, SALCINES, STRINGER, DAVIS, SILBERMAN, KELLY, CANADY, VILLANTI, and WALLACE, JJ., Concur.
NORTHCUTT, J., dissents with opinion in which FULMER, J., Concurs.
NORTHCUTT, Judge, dissenting.
Law enforcement officers have probable cause to stop a vehicle that is proceeding down the highway only if the circumstances confronting the officers support the reasonable belief that the driver has committed a crime or traffic infraction. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In this case, the officers violated that requirement when they stopped Tristan Hilton merely for driving with a cracked windshield. The majority's assertion to the contrary rests on its mistaken belief that a statute providing simply that a vehicle must be equipped with a windshield necessarily requires the windshield to be pristine. This belief stems from an erroneously literal, and therefore overbroad, reading of subsection 316.610(1), Florida Statutes (2002), notwithstanding the Florida Supreme Court's instructions to the contrary.
For Fourth Amendment purposes, it is important to note that subsection 316.610(1) does not describe any crime or infraction. Rather, it prescribes the conditions under which our state will permit its law enforcement officers to conduct a traffic stop for an equipment violation. Logically, these conditions may be more, but not less, stringent than those imposed by the Fourth Amendment. See State v. Langsford, 816 So.2d 136, 138-39 (Fla. 4th *161 DCA 2002). I agree with the majority's conclusion that, when properly construed, the power extended to the police under this subsection does not violate the Fourth Amendment.
But I admit to some confusion about the majority's interpretation of this subsection. My colleagues acknowledge the Fourth Amendment's requirement that officers who stop a vehicle must first have a reasonable basis to believe that the operator of the vehicle has violated the law. But the majority also seems to suggest that subsection 316.610(1) is intended to permit officers to develop a valid basis for a stop based on what they discover after the stop is made. They argue that "it would not be practical to require a law enforcement officer to make a determination regarding the extent of a crack in a windshield until the vehicle is actually stopped." As an example, they cite United States v. Cashman, 216 F.3d 582 (7th Cir.2000). That case involved a traffic stop in Wisconsin, where it is a violation to drive a vehicle with a windshield that is "excessively cracked." Wis. Admin. Code § Trans. 305.34(3) (1997). A windshield is "excessively cracked" if it contains a crack that either extends more than eight inches from the frame or is located within the "critical area," i.e., "that portion of a motor vehicle windshield normally used by the driver for necessary observations to the front of the vehicle ... includ[ing] the areas normally swept by a factory installed wiper system." § Trans. 305.05(43).
Cashman was stopped when driving with a cracked windshield. Photographs in the record of the hearing on his motion to suppress reflected that the crack was between seven and ten inches long and extended above the bottom of one of the resting windshield wipers. Cashman, 216 F.3d at 587. The trial court concluded that the officer properly stopped the car. On appeal, Cashman maintained that the stop was unlawful because the crack was not, in fact, "excessive" as defined by Wisconsin law. The Seventh Circuit rejected this argument.
The focus of Cashman's argument is, however, misplaced. For purposes of the probable cause analysis, we are not concerned with the precise length or position of the crack. The propriety of the stop does not depend, in other words, on whether Cashman was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for Trooper Spetz to believe that the windshield was cracked to an impermissible degree.
Id. The court noted that, given the size and location of the crack, an officer in the trooper's position, passing or approaching Cashman's vehicle on the roadway, could reasonably think that the crack met the legal criteria for excessive cracking.
Careful measurement after the fact might reveal that the crack stopped just shy of the threshold for "excessive" cracking or damage; but the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one. Given the evident length of the crack and its proximity to the portion of the windshield swept by the wipers, Trooper Spetz had probable cause to stop Cashman's vehicle.
Id. (citation omitted).
As can be seen, Cashman stands for the proposition that, if the facts observed by an officer objectively support his reasonable belief that the vehicle is being operated in violation of the traffic laws, the validity of the stop is not vitiated if later investigation reveals that, in fact, there was no violation. Cashman does not hold, as the majority suggests, that officers *162 may stop a vehicle based on a mere hunch that the operator is violating the traffic laws. Neither does Florida's subsection 316.610(1). The majority's concern about practicality notwithstanding, the statute consistent with the Fourth Amendment requires that an officer have reasonable cause to believe that the vehicle is being operated in violation of the law prior to stopping the vehicle.
In Hilton's case, there was no reasonable cause to believe that he was violating the law. Section 316.610 begins with an unnumbered paragraph that reads in pertinent part:
It is a violation of this chapter for any person to drive or move ... any vehicle ... which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps or other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter....
This paragraph is followed by subsection 316.610(1), on which the majority relies:
(1) Any police officer may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of the vehicle to stop and submit the vehicle to an inspection and such test with reference thereto as may be appropriate.
Unlike subsection (1) of the statute, the initial paragraph actually describes the violation that is necessary for a lawful traffic stop under the Fourth Amendment.[2] As can be seen, the statute proscribes three types of conduct: (1) driving a vehicle that is in such unsafe condition as to endanger any person or property; (2) driving a vehicle that lacks equipment in proper condition and adjustment as required in chapter 316; and (3) driving a vehicle that contains equipment in violation of chapter 316. The third type of violation is not at issue here; no one has contended that Hilton's car was improperly equipped. Therefore, our focus must be on the first two kinds of violations listed in the statute.

FLORIDA LAW DID NOT PROHIBIT HILTON TO DRIVE WITH A CRACKED WINDSHIELD
The majority maintains that the officers lawfully stopped Hilton pursuant to subsection 316.610(1) because his windshield was "not in proper adjustment or repair." Of the dozen or so authorities mentioned in the majority opinion, only oneDoctor v. State, 596 So.2d 442 (Fla.1992)actually construes that language. It is telling that the supreme court interpreted subsection (1) in a manner consistent with the statute's above-quoted introductory paragraph, which prohibits driving a vehicle that does not contain equipment "in proper condition or adjustment as required in this chapter." § 316.610 (emphasis supplied). Thus, in Doctor the court held that the very language relied upon by the majority in this case "must be read in conjunction with those statutes which delineate the specific equipment requirements for vehicles." Id. at 446. If the majority were to abide by this instruction, it could not conclude that the officers lawfully stopped Hilton.
At issue in Doctor was an officer's stop of a vehicle because it had a cracked tail-light. As the supreme court noted, section *163 316.221(1) specified the requirements for taillights:
Every motor vehicle ... shall be equipped with at least two taillamps mounted on the rear, which, when lighted as required in s. 316.217, shall emit a red light plainly visible from a distance of 1,000 feet to the rear....
Because only the lens, but not the bulb, was cracked, Doctor still had two taillights shining on the rear of his car. Therefore, the court held, he was not in violation of the law. See also Frierson v. State, 851 So.2d 293, 296 (Fla. 4th DCA 2003) (holding that stop based on, among other things, driving with a cracked taillight was unlawful, citing Doctor), review granted, 870 So.2d 823 (Fla.2004).
The majority attempts to avoid Doctor on several invalid bases. First, it notes that Doctor was decided prior to Whren, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, which disapproved of cases that invalidated "pretextual" stops. The Doctor court did hold that the stop was pretextual. But it did so, in part, because the motorist's cracked taillight simply did not violate Florida law. "In sum, there can be no question that the stop here was pretextual since police had neither a reasonable suspicion of criminal activity nor a valid basis for a traffic stop." Doctor, 596 So.2d at 447 (emphasis supplied). Whren did not, and could not, abrogate the Florida Supreme Court's interpretation of a Florida statute, as evidenced by Frierson, 851 So.2d at 296, in which the Fourth District found Doctor to control the interpretation of subsection 316.610(1) some seven years after Whren.
The majority also notes that Doctor did not involve a situation in which the officer applied the correct law but later determined after closer inspection of the car that there was no violation. Indeed, it did not. Rather, Doctor involved the officer's inaccurate understanding of what the law proscribed. See United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir.2003) (discussing officer's mistaken belief that the law required vehicles to have inside rear-view mirrors, court applied the principle that an officer's reasonable mistake of fact may justify a traffic stop, but an officer's mistake of law does not). As will be seen, insofar as the officers who stopped Hilton believed that Florida law proscribes all windshield cracks, they were mistaken.
Neither is Doctor distinguishable because, as the majority observes, it rejected an interpretation of subsection 316.610(1) that would permit stops for malfunctioning air conditioners or radios. "In contrast," the majority writes, "a windshield is required by statute." This statement completely ignores that Doctor involved the application of subsection 316.610(1) to a cracked taillight, which also was required by statute. Certainly, the majority knows that the court gave those other somewhat hyperbolic examples when rejecting the very same expansive reading of the statute that the majority advocates in this case:
The State argues that section 316.110 [sic] allows police to stop a vehicle for malfunctioning equipment, even if the equipment is not required by statute, poses no safety hazard, or otherwise violates no law. We do not agree. Such an interpretation of section 316.110 [sic] would allow police to stop vehicles for malfunctioning air conditioners or even defective radios, a result clearly beyond the statute's intended purpose of ensuring the safe condition of vehicles operating on our state's streets and highways.
Doctor, 596 So.2d at 447.
Although the law does not require vehicles to be equipped with air conditioners or radios, the supreme court as easily could have made its point with hypothetical examples that clearly do fall within chapter *164 316. For instance, section 316.251(1) provides that "[e]very motor vehicle of net shipping weight of not more than 5,000 pounds shall be equipped with a front and a rear bumper such that when measured from the ground to the bottom of the bumper the maximum height shall be as follows[,]" and then sets forth the maximum bumper heights for vehicles of various weights. Under the majority's decision today, an officer would be permitted to stop a motorist who is driving with a dented bumper simply because the law requires that vehicles be equipped with bumpers. Under Doctor, the dent would not justify a stop because the statute delineating the specific bumper requirements for vehicles does not require that bumpers be free of dents. In other words, a bumper may be dented and still comply with section 316.610 if it is "in proper condition and adjustment as required in this chapter." (Emphasis supplied.)
Finally, the majority declares that "Doctor has no application to the present case, because Hilton's cracked windshield was a violation of Florida law, and the officers had probable cause to stop his car." In other words, the majority blithely proposes to ignore the supreme court's directive about how this statute must be interpreted simply because the majority has chosen to interpret the statute in another way. Even if I thought the majority's view of the issue was the more correct oneobviously, I do notI would be compelled to dissent from this disregard of controlling Florida Supreme Court precedent. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
Doctor controls the interpretation of subsection 316.610(1) notwithstanding the majority's refusal to recognize it. That refusal is ironic, given the majority's assertion that my "interpretation of the Fourth Amendment" would render subsection 316.610(1) unconstitutional. Nowhere in this opinion have I presumed to interpret the Fourth Amendment. But jurists with tonier office addresses than mine have done so, and they have concluded that under the Fourth Amendment an officer may not stop a moving vehicle unless the circumstances support a reasonable belief that the driver has committed a crime or traffic infraction. Consistent with that interpretation of the Fourth Amendment, the Florida Supreme Court has held that the "proper adjustment or repair" language in subsection 316.610(1) "must be read in conjunction with those statutes which delineate the specific equipment requirements for vehicles." Doctor, 596 So.2d at 446. Thus, Doctor requires us to interpret subsection 316.610(1), which itself does not proscribe or prescribe any conduct, in light of statutes that do. As such, the subsection authorizes officers to stop a vehicle if they have reasonable cause to believe that the condition of its equipment violates the specific requirements of chapter 316. And, as such, the subsection comports with Fourth Amendment safeguards. In other words, my colleagues' fear that the constitutionality of subsection 316.610(1) may be questioned has nothing to do with my purported interpretation of the Fourth Amendment. Rather, they should look to their own insistence on interpreting the statute contrary to the dictates of Doctor.
Under Doctor, the officers were authorized to stop Hilton for an equipment violation (as opposed to a safety violation) only if the statutes that delineate the specific equipment requirements for vehicles require that windshields be free of cracks. They do not. The requirements for windshields are set forth in section 316.2952.[3] *165 It provides that a windshield: (1) must be in a fixed, upright position; (2) must be glazed as required by federal safety-glazing standards; (3) must be free of signs or other items other than a certificate or paper required by law, or sunscreening along a strip at the top of the windshield, or a device for the purpose of making electronic toll payments; and (4) must have windshield wipers maintained in good working order. Neither this statute nor any other provision in chapter 316 even mentions, let alone prohibits, cracks in windshields.
As we have seen, that is not the case in, say, Wisconsin, whose law controlled the legality of the stop in Cashman, 216 F.3d at 584. Oklahoma, too, has enacted detailed prohibitions against windshield cracks. That state prohibits driving with a windshield that has suffered (1) an "outright breakage"; (2) a "starbreak" or "shot damage" of more than three inches in diameter and within the "critical area"; or (3) two or more stress or hairline cracks totaling more than twelve inches in length or located in the "critical area." Okla. Stat. tit. 47, § 12-404 (2003). Georgia prohibits windshields with "starburst" or "spiderwebbing" effects larger than nine square inches. Ga.Code Ann. § 40-8-73(e) (2004).
Some other states employ more general language to regulate windshield cracks that interfere with the driver's view. For example, Illinois prohibits driving with a windshield or windows that are "in such defective condition or repair as to materially impair the driver's view to the front, side or rear." 625 Ill. Comp. Stat. 5/12-503(e) (1988). Similar prohibitions are set forth in the laws of California, Connecticut, Iowa, Kansas, Minnesota, Montana, and Wyoming.[4] Like Florida's, the statutes of *166 most states do not expressly regulate windshield cracks at all.
In short, the notion that the statutes of Floridaor of any other state, for that matterrequire that windshields be free of all cracks is simply untrue. The majority's assertion that Florida courts have held to the contrary is plainly wrong. The majority cites four cases involving searches following traffic stops for cracked windshields. But in none of those cases was the propriety of the stop even at issue. In Smith, 735 So.2d at 571-72, the question before the court was the validity of the officers' search of a passenger after the car was stopped. Coleman, 723 So.2d at 388, and Thomas, 644 So.2d at 598, both examined the propriety of pat down searches. In K.G.M., 816 So.2d at 752-53, the defendant challenged the length of his roadside detention while the officers awaited the arrival of a narcotics detection dog.
None of the opinions in those cases described the windshield cracks giving rise to the stops. This is significant because, as will be discussed, a windshield crack might violate the other prohibition in section 316.610 if its location or severity places the vehicle "in such unsafe condition as to endanger any person or property." For this reason, a court's simple observation that a motorist was stopped for having a cracked windshield in violation of Florida law in no way suggests that Florida law prohibits every windshield crack.
Most telling, none of those opinions cited to a statute that requires windshields to be free of all cracks, because there is none. In contrast, the majority's five other examples of traffic stops based on equipment violations all derived from specific requirements in chapter 316. Thus, in Smith, 687 So.2d at 877, the defendant was stopped because her tag light was too dim to make the tag clearly legible for 50 feet, as required by section 316.221(2). Snead, 707 So.2d at 770, involved an inoperable taillight in violation of section 316.221, which requires every vehicle to have two taillights visible for 1,000 feet, and inoperable brake lights contrary to section 316.222, which requires two brake lights visible for 300 feet. Kindle, 782 So.2d at 974, also involved an inoperable taillight. In Moore, 791 So.2d at 1248, the officer stopped the defendant because his windows appeared to be tinted beyond the specific limitations set forth in sections 316.2951-.2956. In Scott, 710 So.2d at 1379, the motorist's turn signal was inoperable, violating sections 316.222(2) and 316.234(2), which together require that every vehicle be equipped with front and rear turn signals that in normal sunlight are visible from 300 feet or 500 feet, depending on the size of the vehicle.
Under Doctor, those stops were proper under section 316.610 because they all involved violations of statutes delineating specific equipment requirements for vehicles. On the other hand, no Florida statute prohibited Hilton to drive with a crack in his windshield. Therefore, the officers were not authorized to stop Hilton for violating section 316.610's prohibition against driving with equipment that is not "in proper condition and adjustment as required in [chapter 316]."

THE STOP WAS NOT JUSTIFIED BECAUSE THE CRACK IN HILTON'S WINDSHIELD PLACED HIS VEHICLE IN SUCH UNSAFE CONDITION AS TO ENDANGER ANY PERSON OR PROPERTY.
As mentioned, a cracked windshield might justify a traffic stop if it violates the *167 other prohibition set forth in section 316.610, i.e., if it renders the vehicle "in such unsafe condition as to endanger any person or property." See, for example, Judge Warner's dissent from the Fourth District's affirmance of an order suppressing contraband seized after a traffic stop in State v. Savino, 686 So.2d 811 (Fla. 4th DCA 1997). Judge Warner argued that under Whren the officer had authority to stop the defendants' car for a violation of section 316.610, based on the officer's testimony that it would have been difficult to see through the "spider" crack in the defendants' windshield. Id.
Other states that have statutes similar to Florida'sin that they do not specifically regulate windshield cracks, but do prohibit driving a vehicle in an unsafe conditionhave ruled likewise. See, e.g., Commonwealth v. Shuck, No. 2003-CA-000420-DG, 2004 WL 2366681 (Ky.Ct.App. Oct. 22, 2004) (unpublished opinion) (holding a windshield that is cracked to the extent it unreasonably impairs the driver's vision violates the statute requiring a vehicle to be equipped so as to promote the public safety; however, based on review of record, which disclosed that cracks in defendant's windshield were lengthy but hairline, the court concluded that facts did not furnish an objectively reasonable basis for the officer's belief that the cracks could have interfered with the driver's view); State v. Latham, No. 20302, 2004 WL 1047578 (Ohio Ct.App. May 7, 2004) (unpublished opinion) (holding that small, horizontal crack just above the windshield wiper between the driver's side of the vehicle and the middle of the vehicle did not support a reasonable belief that operator violated the statute prohibiting the operation of a vehicle in such an unsafe condition as to endanger persons); Muse v. State, 146 Md.App. 395, 807 A.2d 113 (2002) (holding that an officer who observed a two-foot crack across the middle of a windshield had a reasonable belief that the vehicle was being operated in such unsafe condition as to endanger any person); State v. Munoz, 125 N.M. 765, 965 P.2d 349 (N.M.Ct.App.1998) (holding that officer's observation of "star" pattern crack measuring approximately two feet in the center of the windshield gave him reasonable belief that the vehicle was operated in such unsafe condition as to endanger any person).
Certainly, a crack that hinders the driver's view of the road can present an unsafe condition that endangers persons or property. But that possibility is merely academic in this case, because in the proceedings below the State did not assert safety concerns as a justification for stopping Hilton. See State v. Klein, 736 So.2d 9, 10 (Fla. 4th DCA 1998) (holding that state could not assert new theory to justify traffic stop for first time on appeal).[5] Indeed, the officers did not testify that they stopped Hilton because they believed the crack in his windshield rendered his car unsafe. Manifestly, it did not. At just seven inches long, and located almost completely within the sunscreen strip at the top of the windshield on the passenger sidean area that likely would be obscured by a turned-down sunvisorthe crack did not impede Hilton's view of the road. The crack simply could not reasonably have caused the officers to believe that Hilton's vehicle was unsafe in violation of section 316.610.

CONCLUSION
The notion that Florida law requires that windshields be free of cracks is a myth, unsupported by any Florida statute or case law. That being so, the officers' *168 stop of Tristan Hilton was unlawful. For this reason, the law required the circuit court to suppress the evidence seized as a result of the stop. We should reverse Hilton's conviction and remand with instructions to discharge him.
FULMER, J. concurs.
NOTES
[1] "The Fourth Amendment guarantees `[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Whren, 517 U.S. at 809, 116 S.Ct. 1769.
[2] The prohibitions contained in the introductory paragraph of section 316.610 are also set forth verbatim in section 316.215(1).
[3] Section 316.2952, Florida Statutes (2002), provides:

(1) A windshield in a fixed and upright position, which windshield is equipped with safety glazing as required by federal safety-glazing material standards, is required on every motor vehicle which is operated on the public highways, roads, and streets, except on a motorcycle or implement of husbandry.
(2) A person shall not operate any motor vehicle on any public highway, road, or street with any sign, sunscreening material, product, or covering attached to, or located in or upon, the windshield, except the following:
(a) A certificate or other paper required to be displayed by law.
(b) Sunscreening material along a strip at the top of the windshield, so long as such material is transparent and does not encroach upon the driver's direct forward viewing area as more particularly described and defined in Federal Motor Vehicle Safety Standards No. 205 as the AS/1 portion of the windshield.
(c) A device, issued by a governmental entity as defined in s. 334.03, or its designee, for the purpose of electronic toll payments.
(3) The windshield on every motor vehicle shall be equipped with a device for cleaning rain, snow, or other moisture from the windshield, which device shall be constructed as to be controlled or operated by the driver of the vehicle.
(4) Every windshield wiper upon a motor vehicle shall be maintained in good working order.
(5) Grove equipment, including "goats," "highlift-goats," grove chemical supply tanks, fertilizer distributors, fruit-loading equipment, and electric-powered vehicles regulated under the provisions of s. 316.267, are exempt from the requirements of this section. However, such electric-powered vehicles shall have a windscreen approved by the department sufficient to give protection from wind, rain, or insects, and such windscreen shall be in place whenever the vehicle is operated on the public roads and highways.
(6) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.
[4] See Cal. Veh.Code § 26710 (West 2000); Conn. Gen.Stat. § 14-99f(6) (2000); Iowa Code § 321.438(1) (1997); Kan. Stat. Ann. § 8-1741(b) (2003); Minn.Stat. § 169.71(1) (2001); Mont.Code. Ann. § 61-9-405(2)(b) (2003); Wyo. Stat. Ann. § 31-5-955(a) (Michie 1977).
[5] This fact renders the last phrase of the majority's certified question academic, as well.