HAWKES, J.,
dissenting.
I disagree with the majority’s conclusion that the search was constitutional. This dissent will address the majority’s opinion in two sections. First, it will discuss the majority’s insistence that the school resource officer needed only reasonable suspicion to initiate the student search. Second, it will show that under the proper standard of probable cause, the search violated the Florida and United States Constitutions.
School Resource Officers Require Probable Cause To Search
The key to the majority’s decision is its finding that the school resource officer needed only reasonable suspicion — not probable cause — to initiate the search. They reach this result by finding the deputy sheriff serving in the capacity of a school resource officer was a “school official” and, therefore, was exempt from the restrictions placed on law enforcement officers. School officials require only reasonable suspicion to conduct a search; probable cause is needed only “where a law enforcement officer directs, participates, or acquiesces in a search conducted by school officials.” M.J. v. State, 399 So.2d 996, 998 (Fla. 1st DCA 1981). Because the entire search here was instigated by the school resource officer, her classification as either a school official or a law enforcement officer is of critical importance. I believe that several considerations lead to one inescapable result: school resource officers are law enforcement officers and, therefore, must possess probable cause before searching a student. These considerations are (1) testimony from the record indicating school resource officers operate as law enforcement officers; (2) school resource officers’ statutory certification by the State of Florida as law enforcement officers; (3) relevant caselaw *569 from our District; and (4) matters of policy-
Factually, the issue is clear. The record shows the school resource officer was employed by the Jacksonville Sheriffs Office as a sworn, certified officer. She testified she was employed by the Jacksonville Sheriffs Office and assigned to the school in question. The only other witness to testify was the school security guard, who indicated he was directly employed by the school. This shows a distinction in their positions. Since the resource officer was a Sherriffs employee, as opposed to a security guard employed by the school, she needed probable cause to search defendant. There is no other situation where individuals who are sworn, certified, and acting in the course and scope of their law enforcement duties are treated as private actors. In fact, it is nearly impossible for law enforcement officers to lose their identity as law enforcement for purposes of a Fourth Amendment analysis. See State v. Butler, 1 So.3d 242, 246 (Fla. 1st DCA 2008) (finding hospital staff monitoring cameras placed in a suspect’s recovery room should be treated as instrumentalities of the State as “the hospital desired to act at the State’s behest, and did so”); State v. Iaccarino, 767 So.2d 470, 475-76 (Fla. 2d DCA 2000) (finding off-duty sheriffs officers engaged in an “extra duty” assignment to provide security at a private concert should be treated as law enforcement, despite the fact that the concert promoter paid for their work).
Statutory support for recognizing that school resource officers are law enforcement officers can be found in the statute creating the role of school resource officers. Section 1006.12(l)(a)(l), Florida Statutes (2009), states:
School resource officers shall be certified law enforcement officers, as defined in section 943.10(1), who are employed by a law enforcement agency as defined in section 943.10(4). The powers and duties of a law enforcement officer shall continue throughout the employee’s tenure as a school resource officer,
(emphasis added). The statute goes on to state that although school resource officers must abide by school policies and consult •with the school principal, they are “responsible to the law enforcement agency in all matters relating to employment.” § 1006.12(l)(b), Fla. Stat. (2009). Based only on the language of this statute, it seems clear that treating school resource officers as if they are not law enforcement officers defies logic.
In addition to the statute at issue, the majority also disregards binding precedent concerning school resource officers. It cites multiple cases from other jurisdictions equating school resource officers to school officials. However, it fails to mention the one case from this Court that addresses how resource officers should be classified, a case which holds, without question, that school resource officers are law enforcement. This case, A.J.M. v. State, 617 So.2d 1137 (Fla. 1st DCA 1993), concerned a search performed by a school resource officer at the request of a school principal. Besides the principal’s request, the officer had no independent reason to justify the search. Id. at 1138. This Court held it could not
ignore the legal test adopted by the court in M.J., which is whether the officer directed, participated in or acquiesced in the search. In the instant case, the officer actually conducted the search in question. Under the dictates of M.J., the appropriate test in determining the validity of the search was whether probable cause existed for the search.
Id. at 1138 (emphasis added). This Court’s decision in A.J.M. is clear: for the *570 last eighteen years, the First District has recognized school resource officers as law enforcement, consistent with their training, certification and the governing statute. Accordingly, school resource officers in the First District are not distinguishable from other law enforcement officers and must have probable cause before searching a student.
There is no doubt of this holding. It has been cited multiple times across the country for this principle. See State v. N.G.B., 806 So .2d 567, 569 (Fla. 2d DCA 2002) (stating A.J.M. holds “that the appropriate standard for assessing the search by [a] school resource officer [is] probable cause”); see also R.D.S. v. State, 245 S.W.3d 356, 368 (Tenn.2008); Commonwealth of Pennsylvania v. J.B., 719 A.2d 1058, 1065 (Pa.Super.Ct.1998); In Interest of Angelia D.B., 211 Wis.2d 140, 564 N.W.2d 682, 687 (1997); People v. Dilworth, 169 Ill.2d 195, 214 Ill.Dec. 456, 661 N.E.2d 310, 317 (1996).[1] Given the decision in A.J.M., the majority has created internal conflict by holding here that school resource officers require only reasonable suspicion to search. I cannot agree with this result.
Also troubling are the policy considerations of the majority’s opinion. While on school grounds, school resource officers perform the same responsibilities and have the same authority as other uniformed police officers. Indeed, once police officers report to a school, they can be considered school resource officers, as their function and powers are exactly the same. See § 1006.12(1) (stating resource officers are “certified law enforcement officers” [ ] “employed by a law enforcement agency”). The majority ignores this and classifies resource officers as school employees, not law enforcement. This creates two separate lines of policy, neither of which is preferable. Under the majority’s decision, courts must either treat all law enforcement the same, allowing all officers to benefit from lowering the standard for school resource officers, or engage in complex fact finding in each case to determine whether an officer was acting in the capacity of a school resource officer.
The first possibility hinges upon the identical authority and certification of school resource officers and law enforcement. Due to their identical nature, it follows that they should be subject to the same Fourth Amendment standards. Therefore, the majority’s decision to classify resource officers as school employees can logically be extended to all law enforcement on school grounds. This would mean that all searches conducted by law enforcement on school grounds would be subject to the less stringent constitutional standards afforded to school employees. Clearly, this cannot be the majority’s intent. Nor is it even permissible. See M.J., 399 So.2d at 998 (finding law enforcement officers conducting a search should be held to a different standard than school officials). But by applying the lesser constitutional standard to one recognized type of sworn law enforcement officer, it is diffi *571 cult to see why it could not be extended to another.
The second possibility is that in an effort to maintain a distinction between school resource officers and other types of law enforcement, courts will have to engage in complex fact finding to distinguish those circumstances where a law enforcement officer on school grounds is operating as a school resource officer from those circumstances where the law enforcement officer is not. On the surface, this may seem an easy task, as at times there will be no question that a search or seizure was conducted by an officially designated “school resource officer.” However, there are many situations where the distinction will not be so clear cut.
For example, should police officers retain their law enforcement designation if they are assigned to a school for only a short period of time, such as to fill in for a school resource officer on sick leave? If so, at what point do they lose their law enforcement designation when they are assigned to the school for a longer period of time? Moreover, what designation should be used when the officers are assigned to the school for only a certain period of the day, such as to help oversee the students at dismissal? For that hour or two each afternoon, should they be treated as law enforcement or school employees? Or perhaps the distinction hinges upon the reason why the officer was assigned to a school. The majority implies that police officers should be subject to the same standard as school employees when they are searching specifically for guns. Should the law enforcement designation be similarly disregarded when the search is for an equally harmful item, such as knives? If not, what objects are “dangerous” enough to justify lowering the constitutional standard? And what if the officer’s presence has a more general but no less legitimate purpose, such as to prevent drugs or facilitate school safety?
In short, by distinguishing between different types of law enforcement, the majority has opened Pandora’s Box. Courts in each case will have to make specific fact findings to determine if the officer in question was operating as a school employee or general law enforcement. These findings will hinge on the individual officer’s responsibilities and intent, which may be difficult to define. No clear precedent will ever be established because each case will have its own unique facts. The better option — the one supported by both section 100.612(l)(b) and caselaw from this District — is to declare all law enforcement, whether categorized as a school resource officer or not, as subject to the same heightened constitutional standard.[2]
The Trial Court’s Findings Did Not Justify The Search
Given the foregoing, statutory law, case-law from this District, and matters of poli *572 cy require a school resource officer to have probable cause before conducting a search. This standard was not met here. The trial court gave three fact findings to justify the search:
(1) the resource officer had received a tip that defendant had possessed a firearm at school three months earlier;
(2) defendant’s odd behavior, walking slowly toward the security office; and
(3) defendant’s admission that he was carrying a lighter, contrary to school policy.
Only the tip, the first finding, was a fact known to law enforcement before the Fourth Amendment intrusion occurred. Therefore, only the tip may be used to justify the search.
Contrary to the majority’s finding, defendant’s Fourth Amendment rights were triggered at the moment the resource officer ushered him from the school cafeteria. The search may not be justified by any conduct which occurred after that moment. It is well settled that for the purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by means of physical force or show of authority, has in some way restricted a defendant’s liberty. See Caldwell v. State, 41 So.3d 188, 195 (Fla.2010). This does not occur if law enforcement simply approaches an individual and asks him questions. Id. at 196. Rather, it occurs when an officer’s words and actions convey to a reasonable, innocent person that he is not free to leave. See Florida v. Bostick, 501 U.S. 429, 437-48, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); Caldwell, 41 So.3d at 196-97. Here, the school resource officer and security officer approached defendant in the cafeteria and ordered him to accompany them to the school office. It cannot be said that a reasonable person, placed in defendant’s position, would have felt free to refuse this command. Therefore, recognizing that the resource officer is by law a law enforcement officer, defendant’s Fourth Amendment rights were intruded upon at that moment.[3]
This means that when deciding if the resource officer had probable cause to search, we may consider only what occurred before she seized defendant in the cafeteria. This leaves only the first finding — the anonymous tip. Anonymous tips only support probable cause when they are corroborated (see Davis v. State, 346 So.2d 141, 142 (Fla. 1st DCA 1977)) and timely. See Gonzalez v. State, 38 So.3d 226, 229 (Fla. 2d DCA 2010). The tip here fails on both criteria. The information the resource officer received indicated defendant had a gun on school grounds three months prior. It did not indicate defendant had a gun on his person that day. Nor did it indicate the basis for the informant’s knowledge. Because the tip was both stale and given without corroboration, it did not constitute probable cause to search. Indeed, it is difficult to see how such information could even create reasonable suspicion. See Jain v. State, 577 So.2d 1002, 1003 (Fla. 2d DCA 1991) (finding stale information, standing alone, cannot create reasonable suspicion).
*573 The majority argues that the tip in itself constituted sufficient reason to conduct the search because it concerned a student carrying a firearm on school grounds. However, there is no support in Florida or in the United States Supreme Court for creating such a firearm exception to constitutional search requirements. See Regalado v. State, 25 So.3d 600, 605 (Fla. 4th DCA 2009) (finding the Florida Supreme Court has refused to recognize such an exception). As the majority notes, the United States Supreme Court rejected a firearm exception in Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), finding anonymous tips alone cannot justify a search in a public place, regardless of whether the tips concern the unlawful possession of firearms.
Moreover, the facts of this ease make it an unsuitable candidate to create such an exception. Not only was the information on which the search was predicated stale and unreliable, but it was not even treated seriously by the resource officer. She testified that after receiving the anonymous tip, she took no immediate action. Instead, she waited until the following day, at which time she asked the security officer to help her locate defendant, but did not tell him why. After finding defendant in the cafeteria, she left him in the care of the security officer — who still had no idea why defendant was being singled out — and went to “handle[] another situation with another administrator.” She later rejoined the security officer and defendant in the security office. Had the resource officer truly suspected defendant was armed, it is unlikely she would have treated the anonymous tip in such a cavalier manner.
Finally, even considering all three fact findings noted by the trial court to justify the search, I still do not believe probable cause was shown. The second finding was that defendant was reluctant to walk to the security office. This finding is hardly indicative of probable cause to search for a firearm, as there are many far less consequential school rule infractions which could provoke a student to be reluctant to report to the security office. The third finding— defendant’s admission to possessing a lighter in violation of school rules— amounts to nothing more than acquiescence to the authority of the resource officer and security officer. Furthermore, simply because defendant was carrying a lighter did not give any reason to believe he also possessed a firearm. In short, none of the trial court’s findings gave probable cause to conduct the search.
Conclusion
In conclusion, the trial court’s findings showed the resource officer instigated, or at the least participated in, the search of defendant. Applicable statutes, caselaw, and policy from this District require that law enforcement officers, including school resource officers, possess probable cause to search a student. Since the findings show the search was conducted without probable cause, it was both unreasonable and unconstitutional. I believe the denial of the motion to suppress should be reversed, and for this reason I dissent.

. The majority may argue that A.J.M. contains language indicating that only reasonable suspicion is needed for resource officers to perform a search. This claim would be based on two statements occurring at the end of the opinion. The first occurs in a footnote and indicates the state has not argued "that the school resource officer was not an officer for the purpose of applying the probable cause standard.” A.J.M., 617 So.2d 1138 n. 1. The second occurs in the body of the opinion and notes that because the State offered no evidence as to why the principal asked the resource officer to perform the search, it "is impossible to determine whether probable cause or reasonable suspicion existed.” Id. However, both statements may be considered dicta, as neither contradicts the case's plain holding — given earlier in the opinion — that the "appropriate test” to determine the validity of a resource officer's search is "whether probable cause existed for the search.” Id.

. The United States Supreme Court confronted similarly thorny questions in a line of cases dealing with whether police officers were conducting "pretextual” traffic stops. Courts had been judging each case on a situational basis, attempting to ascertain whether each officer’s motives for the stop were genuine or merely a pretext. The Supreme Court stopped such speculation by creating a simple, objective test: whether the officer had probable cause for the stop, regardless of the officer’s possible motives. It found that judging the motives and intent of each officer was too difficult in application. See Whren v. United States, 517 U.S. 806, 814-15, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); see also Holland v. State, 696 So.2d 757, 759 (Fla. 1997); State v. Moore, 791 So.2d 1246, 1249 (Fla. 1st DCA 2001); Parrish v. State, 937 So.2d 1231, 1233 (Fla. 1st DCA 2006). Similarly here, attempting to distinguish school resource officers from other types of law enforcement will require case-by-case analysis of each officer’s motives and intent. The better approach is to simply apply an objective standard: treating school resource officers as law enforcement and holding them to the same standard as all other law enforcement officers.

. The majority argues that identifying that moment as the seizure "could have disastrous results” as it will restrict the ability of school officials to question students. This is not the case. School officials are held to different standards than law enforcement. A school official may remove a student from class or an activity to question him without triggering the student's Fourth Amendment rights so long as the official is not acting arbitrarily or capriciously. See J.D. v. State, 920 So.2d 117, 118 (Fla. 4th DCA 2006); W.J.S. v. State, 409 So.2d 1209, 1210 (Fla. 1st DCA 1982).