961 So.2d 284 (2007)
Tristan HILTON, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-438.
Supreme Court of Florida.
July 5, 2007.
*285 James Marion Moorman, Public Defender, and Anthony C. Musto, Special Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Petitioner.
Bill, McCollum, Attorney General, Tallahassee, FL, Robert J. Krauss, Bureau Chief, Tampa Criminal Appeals, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, FL, for Respondent.
LEWIS, C.J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
MAY A POLICE OFFICER CONSTITUTIONALLY CONDUCT A SAFETY INSPECTION STOP UNDER SECTION 316.610 AFTER THE OFFICER HAS OBSERVED A CRACKED WINDSHIELD, BUT BEFORE THE OFFICER HAS DETERMINED THE FULL EXTENT OF THE CRACK?
Hilton v. State, 901 So.2d 155, 160 (Fla. 2d DCA 2005). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We rephrase the certified question to more closely relate *286 to the applicable statute and facts as follows:
WHETHER A LAW ENFORCEMENT OFFICER MAY STOP A VEHICLE FOR A WINDSHIELD CRACK ON THE BASIS THAT THE CRACK RENDERS THE WINDSHIELD "NOT IN PROPER ADJUSTMENT OR REPAIR" UNDER SECTION 310.610 OF THE FLORIDA STATUTES (2001).
We answer this question in the negative and hold for the reasons discussed below that a cracked windshield violates section 316.610 only if it renders the vehicle in "such unsafe condition as to endanger any person or property." § 316.610, Fla. Stat. (2001).

FACTS AND PROCEDURAL HISTORY
On January 25, 2002, Clearwater police officers Sena and Harrison stopped Hilton's car after noticing that it had a crack in the windshield. The officers checked Hilton's identification for outstanding warrants and determined that Hilton was on probation for previously committing a felony. During the encounter, Officer Matthews, who had responded to the scene as backup, observed what initially appeared to be a rifle in plain view on the floor of the back seat of Hilton's car.
While escorting Hilton from the vehicle to the curb for purposes of taking him into custody for being a convicted felon in possession of a firearm, Officer Harrison smelled the odor of marijuana. Officer Harrison commenced a pat-down search of Hilton, and then another responding officer, Officer Dawe, observed a large bulge near the waistband of Hilton's shorts and proceeded to search Hilton as well. Officer Dawe's search revealed what was later determined to be forty-two bags of marijuana. Hilton was arrested and charged with possession of marijuana with intent to sell. Once the "rifle" was actually retrieved and removed from Hilton's vehicle and secured in the police cruiser, it was determined to be only a BB gun.[1]
Hilton filed a motion to suppress, asserting that the stop was improper because the crack in the windshield "was barely visible and located in the lower right corner of the windshield and did not obstruct any view of the driver" and because "[t]he rifle, at the scene, was determined to be a Daisy pump action air rifle." During a pretrial hearing, Officer Harrison indicated that the length of the crack was approximately seven or eight inches long. However, the testimony as to when Officers Harrison and Sena observed the crack was in severe conflict.[2] Additionally, Officer Harrison testified that no glass was falling from the crack, and when asked if the crack would have obstructed the driver's view, he replied, "No, not as far as I know. I don't know." Officer Harrison also stated that prior to the discovery of what initially appeared to be a rifle, his intention after checking Hilton's identification was solely to issue Hilton a warning for the cracked windshield and a seatbelt violation. Officer Sena testified that he knew Hilton was a convicted felon prior to the stop because he "worked a little over five years in the North Greenwood community in the community policing unit there, so I knew [Hilton] from the community." Officer Sena further testified that he and Harrison *287 would not have stopped Hilton but for the crack in the windshield.
In ruling on the motion to suppress, the judge admitted that he had concerns about the conflicting testimony of the officers. Nevertheless, the trial judge denied the motion, stating:
[O]n reflection and review and consideration of the law . . . I think I have to at this point accept the testimony of the officers, notwithstanding conflict and notwithstanding that I can think of other possibilities, that I think the proper standard would be to accept that they observed the crack in the windshield, which was supported by the ultimate finding of the crack in the windshield, and that was the objective basis of the stop.
Hilton subsequently pled no contest to possession of marijuana, but reserved his right to appeal the denial of the motion to suppress.
On appeal, the Second District initially held that the officers had no authority to stop Hilton's car and reversed his conviction. See Hilton v. State (Fla. 2d DCA 2004) (Hilton I). The court initially stated that while section 316.2952 of the Florida Statutes (2001) mandates that cars be equipped with a windshield and have working windshield wipers, the section says nothing about cracks. See id. at D1475. The Second District noted in its first opinion that section 316.610 of the Florida Statutes provides that it is a traffic violation to drive a car that either is unsafe or does not contain equipment in the proper condition. See id. However, because section 316.2952 merely requires a car to have a windshield, but does not contain requirements for the "proper condition" of the windshield, the initial panel of the Second District reasoned that driving with a cracked windshield would be a traffic violation only if it violated the "unsafe condition" portion of section 316.610. See id. The court concluded that "the evidence did not show that the crack in Hilton's windshield blocked the driver's view or otherwise placed the car in such unsafe condition as to endanger any person or property." Id. at D1476.
However, the Second District subsequently granted rehearing en banc and then affirmed Hilton's conviction, concluding that because section 316.2952 of the Florida Statutes requires a windshield on every motor vehicle, the officers lawfully stopped Hilton because his cracked windshield constituted a noncriminal traffic infraction. See Hilton v. State, 901 So.2d 155, 156-57 (Fla. 2d DCA 2005) (Hilton II). On rehearing, the Second District noted that section 316.610(1) of the Florida Statutes authorizes a police officer to stop a driver and submit a vehicle to an inspection if the officer has reasonable cause to believe that the vehicle is "unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair." Id. at 157 (quoting § 316.610(1)). The court reasoned from this statutory language that the Legislature did not intend to limit the authority of the police only to cases in which the defective equipment created an immediate or heightened level of risk. See id. In further support of its conclusion on rehearing, the Second District quoted the opening paragraph of section 316.610, which provides:
It is a violation of this chapter for any person to drive . . . any vehicle . . . which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter. . . . *288 Id. (quoting § 316.610(1)). The Second District concluded that because a windshield is required by section 316.2952, it is a violation of section 316.610 to drive a vehicle with a windshield that is not in proper condition. See id. The Second District also noted that because subsection (2) of section 316.610 authorizes an officer to give a driver written notice to repair a vehicle equipment defect even where that defect does not present unduly hazardous operating conditions, officers may properly stop a vehicle to give such a notice. See id.

The Second District additionally held on rehearing that section 316.610(1) does not violate the Fourth Amendment. See id. The court concluded that this statute was not created by the Legislature as a means of criminal investigation; rather, the Legislature intended "to create a noncriminal safety stop to permit police to perform a quick vehicle-specific safety inspection that is cheaper and less intrusive, and arguably more effective, than methods of mandatory, annual vehicle inspection." Id. at 157-58. Moreover, the Second District concluded that even if a cracked windshield constitutes a traffic violation only if it creates an unsafe condition, an officer may be reasonable in his or her belief that the crack met such criterion, although an examination of the windshield after the stop ultimately revealed that the crack did not. See id. at 159.
Concluding that the issue presented by this case "affects the power of law enforcement throughout the state," the Second District certified the above-quoted question to this Court as one of great public importance. See id. at 160.

ANALYSIS
It is a question of statutory interpretation as to whether section 316.610 of the Florida Statutes permits a stop for a cracked windshield on the basis that the crack renders the windshield "not in proper adjustment or repair," even if the crack does not otherwise render the vehicle unsafe. Statutory interpretation is a question of law subject to de novo review. See BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003).
Section 316.610 of the Florida Statutes, a general statute addressing defective equipment on vehicles, provides, in pertinent part:
316.610. Safety of vehicle; inspection.  It is a violation of this chapter for any person to drive . . . any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter, or for any person to do any act forbidden or fail to perform any act required under this chapter.
(1) Any police officer may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of the vehicle to stop and submit the vehicle to an inspection and such test with reference thereto as may be appropriate.
(2) In the event the vehicle is found to be in unsafe condition or any required part or equipment is not present or is not in proper repair and adjustment, and the continued operation would probably present an unduly hazardous operating condition, the officer may require the vehicle to be immediately repaired or removed from use. However, if continuous operation would not present unduly *289 hazardous operating conditions . . . the officer shall give written notice to require proper repair and adjustment of same within 48 hours. . . .
§ 316.610(1)-(2), Fla. Stat. (2001). Section 316.2952 of the Florida Statutes, which enumerates the specific windshield requirements for Florida vehicles, provides:
(1) A windshield in a fixed and upright position, which windshield is equipped with safety glazing as required by federal safety-glazing material standards, is required on every motor vehicle which is operated on the public highways, roads, and streets, except on a motorcycle or implement of husbandry.
(2) A person shall not operate any motor vehicle on any public highway, road, or street with any sign, sunscreening material, product, or covering attached to, or located in or upon, the windshield, except the following: [exceptions listed].
(3) The windshield on every motor vehicle shall be equipped with a device for cleaning rain, snow, or other moisture from the windshield, which device shall be constructed as to be controlled or operated by the driver of the vehicle.
(4) Every windshield wiper upon a motor vehicle shall be maintained in good working order.
(5) [Addressing grove equipment]
(6) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.
§ 316.2952, Fla. Stat. (2001).
In holding that the stop of Hilton was proper under section 316.610, the Second District noted that under section 316.610(1), officers have the authority to stop a vehicle if the officer has reasonable cause to believe that vehicle is "unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair." Hilton II, 901 So.2d at 157. The Second District reasoned that a visible crack in a windshield provides a legal basis for a traffic stop because the windshield is not in proper repair. See id. Further, the Second District concluded that since a windshield is required by section 316.2952, a cracked windshield is a violation of section 316.610 because the windshield is not in proper condition and adjustment. See id.
Under the tenets of statutory construction and our interpretation of section 316.610 in prior case law, we conclude that the Second District's analysis is incorrect. This Court has held that "[i]t is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." Hechtman v. Nations Title Ins. of New York, 840 So.2d 993, 996 (Fla. 2003). As noted earlier, the introductory paragraph of 316.610 provides that it is a violation for a vehicle to be driven "which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter." § 316.610, Fla. Stat. (2001) (emphasis supplied). The section of chapter 316, Florida Statutes, governing windshields requires only: (1) that a vehicle have a windshield in a fixed and upright position that is equipped with safety glazing; (2) that the windshield be equipped with a driver-controlled device for cleaning moisture from the windshield; and (3) that windshield wipers be maintained in good working order. See § 316.2952, Fla. Stat. (2001). Thus, any other problems with windshields, such as chips, dings, or cracks, are not within section 316.2952 and do not constitute a traffic violation under that statute. To conclude that any defect or *290 damage renders a vehicle's equipment "not in proper adjustment or repair," and, therefore, subject to stop and inspection by law enforcement officers pursuant to section 316.610(1), would ignore the language in the introductory paragraph of the statute which provides that it is a violation for a vehicle not to have equipment that is in proper condition or adjustment "as required in this chapter." § 316.610, Fla. Stat. (2001); see also Hechtman, 840 So.2d at 996.
Further, even though section 316.610(1) lacks the "as required in this chapter" language that is contained in the unnumbered introductory paragraph, see § 316.610, Fla. Stat. (2001), and permits stops where an officer has reasonable cause to believe that a vehicle's "equipment is not in proper adjustment or repair" without specifying that the equipment be statutorily required, we conclude that subsection (1) does not give officers the authority to stop a vehicle for any equipment defect or damage. This Court has recognized as axiomatic the principle that "all parts of a statute must be read together in order to achieve a consistent whole." Clines v. State, 912 So.2d 550, 557 (Fla.2005) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)). The United States Supreme Court has held that stopping a vehicle is permissible under the Fourth Amendment only where there is a reasonable suspicion that either the vehicle or an occupant is subject to seizure for a violation of law. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Thus, for a stop to be constitutional under the "not in proper adjustment or repair" section of 316.610(1), the equipment defect or damage must be in violation of the law. See id. at 663, 99 S.Ct. 1391. However, it is the unnumbered introductory paragraph of 316.610, not subsection (1), that provides the types of equipment defects which constitute a violation under the statute. See § 316.610, Fla. Stat. (2001). Therefore, subsection (1) must be read in conjunction with its introductory paragraph to ensure that the statute is internally consistent and to ensure that traffic stops comply with Fourth Amendment mandates. See Prouse, 440 U.S. at 663, 99 S.Ct. 1391; Clines, 912 So.2d at 557. The section of chapter 316 that enumerates the requirements for windshields does not prohibit the operation of a vehicle with a crack in the windshield, see § 316.2952, Fla. Stat. (2001); therefore, an officer may stop a vehicle for a windshield crack only if the crack poses a safety hazard. An officer is not authorized under section 316.610 to stop a vehicle for just any windshield crack under the "not in proper adjustment or repair" provision of subsection (1).
Moreover, to determine the types of equipment defects which authorize an officer to stop a vehicle and submit it to a purported safety inspection pursuant to section 316.610(1), we have previously held that "[s]ection 316.610 . . . must be read in conjunction with those statutes which delineate the specific equipment requirements for vehicles." Doctor v. State, 596 So.2d 442, 446 (Fla.1992). In Doctor, the officers' alleged reason for stopping a vehicle was a cracked taillight. See id. While the lens cover/reflector of the taillight did have a crack, the vehicle still had working taillights on each side of the rear of the vehicle. See id. at 446-47. This Court determined that the relevant statute only required taillights to emit a red light that is visible from a certain distance, and the crack in the lens cover/reflector did not violate the statute. Therefore, the stop was improper. See id. at 446-47. We rejected the State's argument that section 316.610 authorizes law enforcement officers to stop a vehicle for malfunctioning *291 equipment, "even if the equipment is not required by statute, poses no safety hazard, or otherwise violates no law." Id. at 447. In doing so, we reasoned that "[s]uch an interpretation of section 316.110[sic] would allow police to stop vehicles for malfunctioning air conditioners or even defective radios, a result clearly beyond the statute's intended purpose of ensuring the safe condition of vehicles operating on our state's streets and highways." Id.[3] The present case is no different.
In his dissenting opinion in Hilton II, Judge Northcutt relied on the aforementioned analysis in Doctor to conclude that the mere existence of a windshield crack alone is not a valid basis for a stop:
Although the law does not require vehicles to be equipped with air conditioners or radios, the supreme court as easily could have made its point with hypothetical examples that clearly do fall within chapter 316. For instance, section 316.251(1) provides that "[e]very motor vehicle of net shipping weight of not more than 5,000 pounds shall be equipped with a front and a rear bumper such that when measured from the ground to the bottom of the bumper the maximum height shall be as follows[,]" and then sets forth the maximum bumper heights for vehicles of various weights. Under the majority's decision today, an officer would be permitted to stop a motorist who is driving with a dented bumper simply because the law requires that vehicles be equipped with bumpers. Under Doctor, the dent would not justify a stop because the statute delineating the specific bumper requirements for vehicles does not require that bumpers be free of dents. In other words, a bumper may be dented *292 and still comply with section 316.610 if it is "in proper condition and adjustment as required in this chapter."

See 901 So.2d at 163-64 (Northcutt, J., dissenting). We conclude that Judge Northcutt's analysis accurately interprets this Court's holding in Doctor with regard to the necessary interaction between section 316.610 and other sections of chapter 316.
In Doctor, the relevant statute required taillights on vehicles, but did not prohibit cracks in the lens covers/reflectors of taillights. See 596 So.2d at 446. Similarly, section 316.2952 requires a windshield on vehicles, but does not address or prohibit cracks in windshields. See § 316.2952, Fla. Stat. (2001). As we noted in Doctor, interpreting section 316.610 to authorize traffic stops for just any type of equipment malfunction, even if such equipment is not required by law, would permit officers to stop vehicles for such defects as a broken radio antenna or a dent in the passenger door of the vehicle. Further, even where certain equipment is required by statute, section 316.610 would permit stops where the equipment is in compliance with the statute but possesses some defect which is not specifically addressed or prohibited by the statute. For example, section 316.252 of the Florida Statutes requires that trucks or semi-trailers of certain weights be "equipped with fenders, covers, or other splash and spray suppressant devices." § 316.252(1), Fla. Stat. (2005). Under the State's interpretation of section 316.610, if a truck is equipped with fenders, but those fenders are dented, law enforcement officers would be authorized to initiate a traffic stop. As this Court concluded unanimously in Doctor, placing such a broad interpretation on section 316.610 would produce results "clearly beyond the statute's intended purpose of ensuring the safe condition of vehicles operating on our state's streets and highways." 596 So.2d at 447.
Therefore, under the analysis adopted by this Court in Doctor, and under principles of statutory construction, see Hechtman, 840 So.2d at 996; Clines, 912 So.2d at 557, we conclude that the provision of section 316.610 which authorizes vehicle stops for equipment that is "not in proper adjustment or repair," § 316.610(1), Fla. Stat. (2001), does not encompass windshield cracks. Thus, a stop for a cracked windshield is permissible only where an officer reasonably believes that the crack renders the vehicle "in such unsafe condition as to endanger any person or property." § 316.610, Fla. Stat. (2001).[4]
Based on the foregoing analysis, we must next consider whether the facts of the instant case support a conclusion that a reasonable officer would have believed that the crack in Hilton's windshield violated the "unsafe" requirement of section 316.610, and, therefore, whether the stop of Hilton's vehicle was constitutionally valid.[5] This Court has stated that "[a] trial court's ruling on a motion to suppress comes to us clothed with a presumption of correctness and, as the reviewing court, we must interpret the evidence and reasonable inferences and deductions derived *293 therefrom in a manner most favorable to sustaining the trial court's ruling." Connor v. State, 803 So.2d 598, 605 (Fla.2001) (quoting Murray v. State, 692 So.2d 157, 159 (Fla.1997)). Nevertheless, "mixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue." Id.
The Fourth Amendment to the United States Constitution and section 12 of Florida's Declaration of Rights guarantee citizens the right to be free from unreasonable searches and seizures. See U.S. Const. amend IV; art. I, § 12, Fla. Const. The Florida Constitution expressly provides that the right shall be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. See art. I, § 12, Fla. Const. Items obtained in violation of Florida's constitutional protection shall be excluded from evidence if such items would be excluded pursuant to United States Supreme Court jurisprudence. See id. Under the exclusionary rule announced by the United States Supreme Court, "the Fourth Amendment bar[s] the use of evidence secured through an illegal search and seizure." Mapp v. Ohio, 367 U.S. 643, 648, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (quoting Wolf v. Colorado, 338 U.S. 25, 28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)).
The United States Supreme Court has explained that automobiles are afforded less Fourth Amendment protection than an individual's home or office:
[T]he inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. . . . Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. In discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. . . .
The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel. . . .
One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view.
South Dakota v. Opperman, 428 U.S. 364, 367-68, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (citations, internal quotation marks, and footnote omitted) (quoting Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974)). At the same time, the High Court has recognized that individuals do not abandon Fourth Amendment protections upon entering a vehicle:
Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other *294 modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed.
Prouse, 440 U.S. at 662-63, 99 S.Ct. 1391. In light of the foregoing, the United States Supreme Court has concluded that "stopping an automobile and detaining its occupants constitute a `seizure'" under the Fourth Amendment, id. at 653, 99 S.Ct. 1391, and unless "there is at least articulable and reasonable suspicion that . . . either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver . . . are unreasonable under the Fourth Amendment." Id. at 663, 99 S.Ct. 1391; see also Nelson v. State, 578 So.2d 694, 695 (Fla.1991) ("Stopping a motor vehicle and detaining the occupant constitutes a seizure within the meaning of the fourth and fourteenth amendments, even though the stop is limited and the resulting detention is quite brief. As such the stop must comport with objective standards of reasonableness, whether that amounts to probable cause or a less stringent test." (quoting State v. Conger, 183 Conn. 386, 439 A.2d 381, 384 (1981))).
The United States Supreme Court has explained that while reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In considering whether an officer had a reasonable suspicion, the High Court looks to the totality of the circumstances to determine whether "the detaining officer [had] `a particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that the reasonableness of a traffic stop depends solely on the validity of the basis asserted by the officer involved in the stop, and the officer's subjective intentions are not involved in the determination of reasonableness. See id. at 813, 116 S.Ct. 1769. Further, the United States Court of Appeals for the Eleventh Circuit has held that a traffic stop based upon an officer's incorrect but reasonable assessment of the facts does not violate the Fourth Amendment, and "so long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." United States v. Chanthasouxat, 342 F.3d 1271, 1277 (11th Cir.2003) (quoting United States v. Cashman, 216 F.3d 582, 586 (7th Cir.2000)).
Despite the foregoing, a number of federal courts have held that an officer's mistake of law as to what constitutes a traffic violation, no matter how reasonable, cannot provide objectively reasonable grounds for reasonable suspicion. For example, in Chanthasouxat, the Eleventh Circuit invalidated a stop where the officer erroneously believed that an Alabama statute required vehicles to be equipped with a rear view mirror inside of the vehicle. See 342 F.3d at 1279. The Eleventh Circuit concluded that the officer's mistake of law was reasonable in that "Officer Carter testified that he considered the lack of an inside rear-view mirror a violation based on his training, [a] magistrate's interpretation of the statute, and the fact that he had written *295 over 100 tickets for the same violation." Id. at 1274. Nevertheless, the Eleventh Circuit held that the officer's mistake of law could not provide the reasonable suspicion to justify a traffic stop. See id. at 1279.
The Eleventh Circuit further concluded that the good-faith exclusionary rule announced by the United States Supreme Court in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984),[6] should not be extended to excuse a vehicular search based on an officer's mistake of law:
We also agree with the . . . Ninth Circuit that . . .
there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law. To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.

[United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir.2000)]. We also note the fundamental unfairness of holding citizens to "the traditional rule that ignorance of the law is no excuse," Bryan v. United States, 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), while allowing those "entrusted to enforce" the law to be ignorant of it.
342 F.3d at 1279-80 (citations omitted); see also United States v. Miller, 146 F.3d 274, 279 (5th Cir.1998) ("Whren provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded." (footnote omitted)).
As reflected above, in strict "mistake of law" cases, the conduct that the officer believed to be in violation of the law was not statutorily prohibited. See, e.g., United States v. Lopez-Soto, 205 F.3d 1101 (9th Cir.2000) (officer erroneously believed that it was a code violation not to display a vehicle registration sticker so that it is visible from the rear); United States v. Lopez-Valdez, 178 F.3d 282 (5th Cir.1999) (officer erroneously believed that a cracked taillight constituted a violation of Texas law); Gordon v. State, 901 So.2d 399 (Fla. 2d DCA 2005) (officer mistakenly believed that air fresheners hanging from rear view mirror constituted traffic violation under Florida law). However, in Florida, a cracked windshield can constitute a traffic violation only if it renders the vehicle in "such unsafe condition as to endanger any person or property." § 316.610, Fla. Stat. (2001). Accordingly, and unlike the aforementioned "mistake of law" cases, whether a cracked windshield constitutes a violation of Florida law is variable and must be evaluated on a case-by-case basis. Thus, even though Officers Sena and Harrison may have been mistaken in the belief that they could stop Hilton for the mere existence of a windshield crack, if the crack as it existed and as it was observed by the officers would have created an objectively reasonable suspicion that Hilton's vehicle was unsafe in violation of section 316.610, then the stop would be valid. See Whren, 517 U.S. at 813, 116 *296 S.Ct. 1769 (constitutional reasonableness of a traffic stop is an objective inquiry).
When a search or seizure is conducted without a warrant, the government bears the burden of demonstrating that the search or seizure was reasonable. See United States v. Johnson, 63 F.3d 242, 245 (3d Cir.1995). In considering the objective reasonableness of a stop for a cracked windshield, state and federal courts have reviewed the evidence presented to the trial court. See, e.g., United States v. Callarman, 273 F.3d 1284, 1287 (10th Cir. 2001) (concluding that a windshield crack of twelve inches across and six inches high gave officer "reasonable articulable suspicion  a particularized and objective basis  to believe that the crack substantially obstructed [the driver's] view of the street") (internal quotation marks omitted); Cashman, 216 F.3d at 587 (upholding stop based on cracked windshield where "the crack in the Blazer's windshield was substantial . . . between seven and ten inches long, and extended above the bottom of one of the resting windshield wipers" and "a trooper . . . could readily and reasonably think that the crack met the administrative criteria for excessive cracking");[7]Ivory v. State, 898 So.2d 184, 186 (Fla. 5th DCA 2005) (upholding stop where officer testified that windshield crack was "substantial . . . and not a hairline crack or chip"); State v. Pease, 531 N.E.2d 1207, 1211 (Ind.Ct.App.1988) (stop valid where "the damage was sufficiently extensive to lead a reasonably prudent person to believe that the vehicle, when driven, created a dangerous situation for those entering the area where the driver's peripheral vision is obscured by the breakage"); Commonwealth v. Schuck, 2004 WL 2366681 at *5 (Ky.Ct.App.2004) (unpublished decision) ("[V]iewed objectively, it was not reasonable . . . to have concluded that these particular cracks could have reasonably interfered with a driver's ability to see out of the windshield so as to interfere with the rights of other traffic or endanger public safety."); Muse v. State, 146 Md.App. 395, 807 A.2d 113, 116, 119 (Ct.Spec.App.2002) (concluding that a twenty-four-inch crack *297 across the front of the windshield could cause an officer to be reasonably concerned that the crack rendered the vehicle unsafe); State v. Galvan, 37 P.3d 1197, 1201 (Utah Ct.App.2001) ("Since Utah law requires a crack of at least 24 inches for a violation, a sparkle alone is insufficient to create a reasonable suspicion that the windshield was a safety equipment violation."); State v. Flowers-Roscoe, 126 Wash.App. 1008, 2005 WL 470424 at *2 (Wash.Ct.App.2005) (unpublished decision) (stop reasonable where officer testified that windshield crack "looked like a `glow stick' when light reflected off of it, causing obstruction and distraction for the driver").
In the instant case, most of the testimony focused exclusively on the existence of a crack in Hilton's windshield, and there was virtually no testimony as to the location or the nature of the crack. The trial court only stated in ruling on the motion to suppress, "I've observed the photographs. I've observed and confirmed from the photograph that there is a clearly visible crack in the windshield of about the approximate length the officer testified to. Something of seven or eight inches. . . ." The trial court made no findings and provided no conclusions with regard to whether the crack in the windshield rendered Hilton's vehicle unsafe. In fact, the only testimony with regard to any safety aspect of the windshield was offered by Officer Harrison, who testified that there was no glass falling out of the crack, and that he was not sure whether the crack would obstruct the driver's view.[8] Having reviewed the record, we conclude that there was insufficient evidence presented at the hearing to provide "a particularized and objective basis" to suspect that the crack in Hilton's windshield rendered his vehicle unsafe in violation of section 316.610. Arvizu, 534 U.S. at 273, 122 S.Ct. 744. The State presented no evidence that the vehicle was in an unsafe condition to endanger person or property and, correspondingly, no evidence that would support an objectively reasonable suspicion that the vehicle was unsafe in violation of the statute. Therefore, the State has failed to support its burden of demonstrating that the stop of Hilton was objectively reasonable, and we conclude that the stop was illegal under the Fourth Amendment. See Prouse, 440 U.S. at 663, 99 S.Ct. 1391; Johnson, 63 F.3d at 245.
To the extent that the dissent challenges the preceding analysis, the opinion appears to take two inconsistent positions. In one portion of its opinion, the dissent concludes that only those windshield cracks that pose a safety risk violate section 316.610. See dissenting op. at 308 ("As Chanthasouxat makes clear, there is a significant difference between a crack in a taillight cover, which could never constitute a violation of the law, and a cracked windshield, which may constitute a violation of the law, depending on the circumstances of the crack."). However, the dissent later appears to agree with the analysis of the Second District in Hilton II that any crack in a windshield renders a vehicle subject to a traffic stop under section 316.610. See dissenting op. at 308 ("I cannot agree with Judge Northcutt's assertion in his dissent in the Second District's decision *298 that `Florida law did not prohibit Hilton to drive with a cracked windshield.'"). Therefore, it is unclear what position the dissent is taking in contending that our analysis is erroneous.
Further, the dissent states: "The issue is whether the officers' observation of the crack in the windshield of Hilton's vehicle was an objectively reasonable basis to stop Hilton." Dissenting op. at 305. This statement in itself is ambiguous.[9] Is the dispositive issue whether the officers reasonably believed that they were authorized by statute to stop Hilton's vehicle for any windshield crack, or whether an objectively reasonable basis existed for the officers to believe that the crack in Hilton's windshield rendered his vehicle unsafe? Regardless, under either interpretation, the dissent's assertion that we have somehow misapplied Whren fails. With regard to the former interpretation, we have determined that section 310.610 only permits a stop for a crack in a windshield that renders a vehicle unsafe. Therefore, under the holding of Whren, for a stop to be constitutionally valid, the evidence must demonstrate an objective basis for concluding that the crack rendered the vehicle unsafe. The misconception that a vehicle may be stopped for any windshield crack or imperfection constitutes a mistake of law, and such a mistake cannot provide objective grounds for reasonable suspicion. See Chanthasouxat, 342 F.3d at 1279. Therefore, if the dissent is contending that the officers' belief that any windshield crack provided a reasonable basis for stopping Hilton's vehicle, the dissent is essentially asserting that the officers' reasonable, but incorrect, interpretation of the law justified the stop. However, this standard is contrary to case law, and disregards the objective inquiry mandated by Whren. See 517 U.S. at 813, 116 S.Ct. 1769; Chanthasouxat, 342 F.3d at 1279.
On the other hand, if the dissent is contending that the issue to be determined is whether an objectively reasonable basis existed for the officers to believe that the crack in Hilton's windshield rendered his vehicle unsafe, we agree with this assertion. See majority op. at 295-96 ("[I]f the crack as it existed and as it was observed by the officers would have created an objectively reasonable suspicion that Hilton's vehicle was unsafe in violation of section 316.610, then the stop would be valid."). Here, however, neither the State nor the officers provided any evidence to support an objectively reasonable belief that the crack in Hilton's windshield "pose[d] a safety risk or impair[ed] the driver's vision." Dissenting op. at 308. Indeed, the testimony presented by Officer Harrison indicated that the windshield did not pose a safety hazard. While we agree with the dissent that "[c]ourts must give `great deference' to the judgment of trained law enforcement officers," dissenting op. at 308, who often must make split-second decisions with regard to initiating a traffic stop, this does not mean that the State may be relieved of its burden "to show that the search or seizure was reasonable." *299 Johnson, 63 F.3d at 245. Moreover, we cannot presume that a stop is constitutionally valid based solely on an officer's subjective belief that a windshield crack, regardless of the length or location of that crack, justified a traffic stop. Although the dissent contends that we are "writ[ing] out of the standard of review any deference to the trial judge," dissenting op. at 45, the dissent fails to acknowledge that the trial judge operated under an incorrect presumption of the law that any windshield crack would justify a traffic stop, stating, "I think the proper standard would be to accept that they observed the crack in the windshield, which was supported by the ultimate finding of the crack in the windshield, and that was the objective basis of the stop." Since we have concluded upon de novo review that such an interpretation of the statute is erroneous, we need not, and indeed cannot, defer to the trial judge's misapplication of the law with regard to the validity of the stop. Were we to do so, we would be abdicating our duty on review to determine the applicable law in the context of the existing facts.
Finally, to the extent that the dissent cites cases from the district courts in support of its analysis, a close review of these cases demonstrates that these decisions do not compel a different holding. In some of the cases, the trial courts properly reviewed whether evidence of the crack demonstrated an objectively reasonable basis for an officer to believe that the vehicle was unsafe in violation of section 316.610. See Ivory, 898 So.2d at 186; State v. Howard, 909 So.2d 390, 392 (Fla. 1st DCA 2005) (trial court granted Howard's motion to suppress because "the 14-inch `hairline crack' on the passenger's side of the windshield did not create a safety issue").[10] In State v. Breed, 917 So.2d 206 (Fla. 5th DCA 2005), although the Fifth District concluded that stopping the vehicle for a cracked windshield was valid, the court did not discuss the crack in any detail and instead focused on the length of the detention after the stop. Therefore, the dissent's reliance upon this case for purposes of interpreting section 316.610 is dubious. Finally, other cases mentioned by the dissent rely upon the reasoning in Hilton II in concluding that the traffic stop was valid under section 316.610, see, e.g., State v. Schuck, 913 So.2d 69 (Fla. 4th DCA 2005); however, today we disapprove the analysis of the Second District in Hilton II. In light of the foregoing, none of these cases compels a different conclusion from that which we reach today.

*300 CONCLUSION
For the above-stated reasons, we conclude that the Second District erred in concluding that any visible crack in a windshield provides a legal basis for a traffic stop. We answer the revised certified question in the negative based on the statutory provisions, quash the decision of the Second District affirming the trial court's denial of Hilton's motion to suppress, and remand for further proceedings not inconsistent with this opinion.
It is so ordered.
ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
ANSTEAD, J., specially concurs with an opinion, in which PARIENTE, J., concurs.
PARIENTE, J., concurs with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., dissents with an opinion, in which CANTERO and BELL, JJ., concur.
ANSTEAD, J., specially concurring.
I fully concur in the majority's analysis. I write separately to also note my concurrence in the scholarly and cogent opinion of Judge Northcutt in his dissent below. While that opinion is comprehensive and thorough in its analysis, I find its conclusion particularly compelling:
Certainly, a crack that hinders the driver's view of the road can present an unsafe condition that endangers persons or property. But that possibility is merely academic in this case, because in the proceedings below the State did not assert safety concerns as a justification for stopping Hilton See State v. Klein, 736 So.2d 9, 10 (Fla. 4th DCA 1998) (holding that state could not assert new theory to justify traffic stop for first time on appeal) [n. 5]. Indeed, the officers did not testify that they stopped Hilton because they believed the crack in his windshield rendered his car unsafe. Manifestly, it did not. At just seven inches long, and located almost completely within the sunscreen strip at the top of the windshield on the passenger side  an area that likely would be obscured by a turned-down sunvisor  the crack did not impede Hilton's view of the road. The crack simply could not reasonably have caused the officers to believe that Hilton's vehicle was unsafe in violation of section 316.610.
[N.5.] This fact renders the last phrase of the majority's certified question academic, as well.
CONCLUSION
The notion that Florida law requires that windshields be free of cracks is a myth, unsupported by any Florida statute or case law. That being so, the officers' stop of Tristan Hilton was unlawful. For this reason, the law required the circuit court to suppress the evidence seized as a result of the stop. We should reverse Hilton's conviction and remand with instructions to discharge him.
901 So.2d at 167-68 (Northcutt, J., dissenting).
PARIENTE, J., concurs.
PARIENTE, J., concurring.
I fully concur in the majority opinion. I write separately to address Justice Wells' dissent. Justice Wells' view is that the officers made at most a "mistake of fact" that does not render the traffic stop for a cracked windshield illegal. I agree that if an officer reasonably suspects that a cracked windshield renders a vehicle unsafe to drive, a traffic stop is lawful. Here, the officers never so testified.
Further, as the majority observes, the State presented no evidence objectively *301 demonstrating that the crack rendered operation of the vehicle unsafe. The State bears the burden of proving that the stop was justified. Construing the officer's decision to stop the vehicle as evidence that the officers reasonably concluded that the crack rendered the vehicle unsafe is an insupportable inference which is inconsistent with the State's obligation to produce evidence justifying a warrantless seizure. Accordingly, I agree with the majority that the State failed to demonstrate that the traffic stop complied with the Fourth Amendment protection against unreasonable searches and seizures.
Justice Wells concludes that the majority "simply disagree[s] with the trial court's determination that the crack in the windshield was an objective basis for the stop and substitutes [its] judgment[ ] for that of the trial court." Dissenting op. at 305-06. This statement is incorrect. Although this Court routinely defers to the trial court on findings of fact, the Court has an obligation to review matters of statutory interpretation de novo. See Tillman v. State, 934 So.2d 1263, 1269 (Fla.2006). In addition, on constitutional questions, specifically those arising under the Fourth Amendment, "important policy concerns requir[e] an appellate court to independently review a trial court's legal conclusions in mixed questions of law and fact." Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). The trial court's finding that the crack was an objective basis for the stop was based on an erroneous interpretation of the statute; specifically, that an officer is authorized under our statutory scheme to stop a vehicle for any windshield crack, regardless of whether the officer reasonably believes that the cracked windshield has rendered the vehicle unsafe to drive. The majority is not substituting its judgment for the trial court. Rather, as a matter of statutory interpretation, the majority has now concluded that the trial court's legal determination was erroneous.
For this same reason, our decision is not in conflict with Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), in which the United States Supreme Court held that the constitutional reasonableness of a traffic stop depends on whether "the police have probable cause to believe that a traffic violation has occurred," not on the motivations of the officers involved. Under the majority's interpretation of section 316.610(2), Florida Statutes (2001), an officer must have a reasonable belief that a cracked windshield renders a vehicle unsafe to drive to constitute probable cause to believe that a traffic violation has occurred.
I also take this opportunity to respond to Justice Wells' statement in the dissent that he finds it "extraordinary that the majority of this Court stands against the overwhelming weight of reasoning in the decisions of all of our district courts." Dissenting op. at 305. Certainly, in matters of statutory interpretation and Fourth Amendment jurisprudence, as in other areas, this Court benefits from a careful review of the reasoning contained in the decisions of all of our district courts of appeal. Those opinions are an extremely helpful starting point for any analysis.
But the suggestion that it is "extraordinary" for this Court to disagree with the district courts because of the "overwhelming weight of reasoning" creates the misimpression that the Court counts the number of district court judges who agree with a specific interpretation before deciding a question of law. Many times, once a particular district court of appeal takes the lead, other district courts of appeal simply adopt the first court's reasoning. Although there is nothing inherently wrong with this approach, this is one reason why *302 we cannot simply defer to the interpretation that has garnered the most support. This is especially true when we are dealing with the first-time construction of a statute.
In this case, we had the advantage of thoroughly reasoned majority and dissenting opinions. After careful consideration, we adopted the reasoning contained in Judge Northcutt's dissenting opinion. Further, other than the Second District's opinion in Hilton v. State, 901 So.2d 155 (Fla. 2d DCA 2005), and the First District's decision in State v. Howard, 909 So.2d 390 (Fla. 1st DCA 2005), which adopts Hilton, there is a decided lack of "reasoning" in the district court decisions cited by Justice Wells. Particularly unpersuasive is the Third District's decision in D.E.M. v. State, 916 So.2d 65, 65-66 (Fla. 3d DCA 2005), a per curiam affirmance with citations to Howard, Hilton and State v. Perez-Garcia, 917 So.2d 894 (Fla. 3d DCA 2005), among others. Interestingly, the Third District's decision in Perez-Garcia, which involved an inoperative rear brake light, rested on the court's conclusion that "a vehicle traveling the highway with an inoperable brake light is a vehicle in an `unsafe condition' within the meaning of . . . section 316.610." 917 So.2d at 897. The same cannot be said of a cracked windshield, which may or may not pose a safety risk depending on the circumstances.
For all of these reasons, I concur in the majority opinion.
ANSTEAD, J., concurs.
WELLS, J., dissenting.
I dissent because the majority has adopted the distinctly minority position in deciding the issue in this case, a position which is not consistent with Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Holland v. State, 696 So.2d 757 (Fla.1997); and Dobrin v. Florida Department of Highway Safety & Motor Vehicles, 874 So.2d 1171 (Fla.2004). Moreover, the majority gives an unreasonable construction to section 316.610, Florida Statutes (2001), and section 316.2952, Florida Statutes (2001).
Prior to the United States Supreme Court's decision in Whren, this Court first applied the "reasonable officer" test as set forth in Kehoe v. State, 521 So.2d 1094 (Fla.1988). In that case, the officers observed the defendants engaging in suspicious behavior when loading a boat onto a trailer: there was an unusually long wait for the boat to arrive at an unusually early hour; the boat lacked any registration numbers; the back of the truck was loaded with the heavy items which could help pull up a heavy load from the ramp; and the boat was loaded onto the trailer and driven away without draining or securing it. The officers also observed a tag violation on the truck and stopped it, at which time they discovered a significant amount of drugs in the boat. Id. at 1095. The defendants asserted that the traffic stop was illegal because the tag was used as a pretext for the stop, as opposed to their suspicions of drug trafficking. After noting that the totality of the circumstances provided a founded suspicion which justified the stop in and of itself, the Court addressed the issue relating to pretextual stops, setting forth the reasonable officer test: in order to show the stop was proper, "[t]he state must show that under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose." Id. at 1097.
This test was the underpinning in the Court's opinion in Doctor v. State, 596 So.2d 442 (Fla.1992). In that case, the officer stopped a vehicle based on a small crack in the taillight. Because the car's *303 windows were heavily tinted, the officer asked the occupants, including the passenger, Doctor, who was attempting to conceal a large package of cocaine, to exit the car. The Court ultimately found the evidence of cocaine should have been suppressed because the initial stop was illegal. Id. at 446. In reaching this decision, the Court relied heavily on the test set forth in Kehoe, noting that the officers who stopped Doctor conceded that they had no reasonable suspicion of any criminal activity until after the stop. Their major purpose on the night of the stop was to intercept drugs by stopping all traffic law violators. To that end, they stopped Doctor's car because of a cracked lens cover on one of his car's taillights, a condition which allegedly violated section 316.610, Florida Statutes (1987). Id. at 446. This Court held that the stop was illegal because a reasonable officer should have known that Doctor's vehicle was in compliance with the law: the cracked lens cover did not violate the statutory requirements for a vehicle's taillight; the vehicle had at least two taillights in working order; the vehicle posed no safety hazard; and there were no other violations of the law. Id. at 447.
The Court undertook a more exhaustive discussion of pretextual stops in State v. Daniel, 665 So.2d 1040 (Fla.1995), reaffirming the reasonable officer test. There, an officer stopped the defendant after observing a large crack in the defendant's windshield and a windshield wiper which was stuck directly across the driver's view. Daniel was unable to present a valid driver's license, so the officer arrested him and found illegal drugs during the pat down. This Court, after noting a three-way split of authority among federal jurisdictions relative to what constitutes an impermissible pretextual traffic stop,[11] reviewed numerous United States Supreme Court cases and held that the reasonable officer test appeared to be more consistent with certain decisions of the nation's highest Court. Accordingly, this Court affirmatively re-endorsed its prior decision in Kehoe establishing the reasonable officer test until such a test was overruled or modified by the United States Supreme Court. Id. at 1047. After reviewing all of the evidence, the Court held that there was competent, substantial evidence supporting the trial court's determination that the stop was valid.
This line of cases was called into question when the United States Supreme Court decided Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The High Court recognized that while the Fourth Amendment forbids unreasonable stops of vehicles, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. at 810, 116 S.Ct. 1769. After discussing the three main approaches relative to what constitutes an impermissible pretextual traffic stop for Fourth Amendment purposes, the Court soundly rejected both the subjective test and the reasonable officer test, holding that both were too subjective. Instead, the Court adopted the objective test, *304 declaring that the protections of the Fourth Amendment are not so variable as to turn upon the individual police enforcement practices which vary greatly from place to place and from time to time. Id. at 815, 116 S.Ct. 1769.
This Court explicitly acknowledged that the reasonable officer test set forth in Daniel, Doctor, and Kehoe was overruled by the objective test of Whren. See Holland v. State, 696 So.2d 757, 759 (Fla. 1997). Accordingly, courts ask only if the officer was objectively authorized and legally permitted to make the stop in question without regard to any pretextual motive. In Dobrin v. Florida Department of Highway Safety & Motor Vehicles, 874 So.2d 1171 (Fla.2004), this Court again affirmed the objective test as set forth in Whren as the present applicable test:
In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that the constitutional reasonableness of a traffic stop under the Fourth Amendment does not depend on the actual, subjective motivations of the individual officers involved in conducting the stop. The only concern under the Fourth Amendment is the validity of the basis asserted by the officer involved in the stop. The Court thus rejected a consideration of whether a reasonable officer under similar circumstances would have initiated the traffic stop, noting that it seems "easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a `reasonable officer' would have been moved to act upon the traffic violation." Id. at 815, 116 S.Ct. 1769.
Id. at 1173.
Four of our district courts have approved the denial of motions to suppress involving cracks in a car windshield, following Whren, Holland, and Dobrin in setting out the standard by which a traffic stop is to be reviewed. See State v. Howard, 909 So.2d 390 (Fla. 1st DCA 2005) (recognizing Whren and holding that cracked windshield on defendant's car justified stop);[12]Hilton v. State, 901 So.2d 155 (Fla. 2d DCA 2005) (recognizing Whren and holding that officers could stop vehicle based on cracked windshield); D.E.M. v. State, 916 So.2d 65 (Fla. 3d DCA 2005) (citing to State v. Howard, 909 So.2d 390 (Fla. 1st DCA 2005), and State v. Perez-Garcia, 917 So.2d 894 (Fla. 3d DCA 2005), both of which rely on Whren); State v. Breed, 917 So.2d 206 (Fla. 5th DCA 2005) (recognizing Whren and holding that law enforcement officer was justified in making traffic stop after he saw that defendant's motor home had cracked windshield); Ivory v. State, 898 So.2d 184 (Fla. 5th DCA 2005) (recognizing Whren and holding that deputy had reasonable suspicion to conduct traffic stop and inspect windshield).
*305 The sole district court decision to be contrary to the Second District Court of Appeal's en banc decision in this case is the Fourth District Court of Appeal's decision in State v. Burke, 902 So.2d 955 (Fla. 4th DCA 2005). In that decision, the Fourth District relied upon this Court's decision in Doctor v. State, 596 So.2d 442 (Fla.1992). However, the Fourth District questioned whether Doctor is still good law in light of the Supreme Court's decision in Whren.[13] Interestingly, a different panel of the Fourth District, in State v. Schuck, 913 So.2d 69 (Fla. 4th DCA 2005), limited the court's earlier decision in Burke and wrote approvingly of the Second District's en banc decision in Hilton, holding that the "legislature clearly did not limit the authority of the police to only those cases in which the equipment created some immediate or heightened level of risk." Schuck, 913 So.2d at 71 (citing Hilton, 901 So.2d at 157). I recognize the majority opinion states that these decisions do not compel a different holding. However, I find it to be extraordinary that the majority on this Court stands against the overwhelming weight of reasoning in the decisions of all of our district courts, including an eleven-to-two en banc majority of the Second District in the case under review in light of Whren, Holland, and Dobrin, and the determination by the trial court that the crack in the windshield was an objective basis for the stop.
The issue is whether the officers' observation of the crack in the windshield of Hilton's vehicle was an objectively reasonable basis to stop Hilton.[14] This issue is straightforward and does not require pages of complicated statutory construction. As the Second District's en banc majority and the First, Third, and Fifth District Courts of Appeal have decided, I would affirm the trial court's determination in the present case as set forth in the majority opinion that the crack was an objective basis to stop the vehicle so the windshield could be checked. Judge Northcutt's dissent and the concurring opinion in this Court simply disagree with the trial court's determination that the *306 crack in the windshield was an objective basis for the stop and substitute their judgments for that of the trial court. The majority and Justice Pariente's concurring opinions write out of the standard of review any deference to the trial judge who resolved conflicting evidence in favor of the determination that there was an objective basis for the stop, which an en banc district court found by an eleven-to-two vote was correct.[15]
It is important to focus on the correct question. In a case arising under Wisconsin law, the United States Court of Appeals made the essential point:
The focus of Cashman's argument [that the crack was not excessive under Wisconsin law] is, however, misplaced. For purposes of the probable cause analysis, we are not concerned with the precise length or position of the crack. The propriety of the traffic stop does not depend, in other words, on whether Cashman was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for Trooper Spetz to believe that the windshield was cracked to an impermissible degree. United States v. Smith, 80 F.3d 215, 219 (7th Cir.1996).
United States v. Cashman, 216 F.3d 582, 587 (7th Cir.2000) (emphasis added). The Eleventh Circuit elaborated on the distinctions between Cashman, where the Seventh Circuit held that the cracked windshield could justify a stop, as opposed to United States v. Lopez-Valdez, 178 F.3d 282 (5th Cir.1999), where the Fifth Circuit held that a stop was not justified for a cracked lens cover on a taillight. As the Eleventh Circuit recognized, for Fourth Amendment purposes in determining whether a stop was proper based on an alleged violation of the law, it is critical that courts distinguish between a mistake of fact, which may provide the objective ground to justify a traffic stop, and a mistake of law, which cannot be used to justify a stop:
a. An Officer's Mistake of Fact and the Fourth Amendment
A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); United States v. Garcia-Acuna, 175 F.3d 1143, 1147 (9th Cir.1999); United States v. Lang, 81 F.3d 955, 966 (10th Cir.1996); United States v. Shareef, 100 F.3d 1491, 1503 (10th Cir.1996); United States v. Hatley, 15 F.3d 856, 859 (9th Cir.1994); United States v. Gonzalez, 969 F.2d 999, 1006 (11th Cir. 1992).
Thus, if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact *307 was reasonable. Great deference is given to the judgment of trained law enforcement officers "on the scene." See Saucier, 533 U.S. at 205-206, 121 S.Ct. 2151 (discussing excessive force claims while noting that excessive force and probable cause questions are subject to the same Fourth Amendment analysis). "The principal components of a determination of reasonable suspicion or probable cause will be . . . viewed from the standpoint of an objectively reasonable police officer. . . ." Ornelas, 517 U.S. at 696, 116 S.Ct. 1657. In Illinois v. Rodriguez, 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court noted that "what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable."
. . . .
For example, in Cashman, on which the government relies, the Seventh Circuit found that an officer had probable cause to stop a car with a seven to ten inch crack in the windshield under a state law that required that no vehicle's windshield be "excessively cracked or damaged." Cashman, 216 F.3d at 586 (quoting Wis. Admin. Code § Trans. 305.34(3) (1997) (internal quotations omitted)). The Wisconsin Code further specified exactly what constituted an excessive crack or damage, and Cashman argued that the crack in his windshield did not meet that criteria. Id. at 586-87. The Seventh Circuit held that even if "[c]areful measurement after the fact . . . reveal[ed] that the crack" was not excessive, the police officer still had probable cause to stop Cashman: "the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one." Id. at 587. The Seventh Circuit also held that the "propriety of the traffic stop does not depend . . . on whether [the defendant is] actually guilty of committing a traffic offense. . . . The pertinent question instead is whether it was reasonable for [the officer] to believe that [a traffic offense had been committed]." Id. (citing United States v. Smith, 80 F.3d 215, 219 (7th Cir.1996)). The Seventh Circuit also noted that "so long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." Id. at 586.
b. An Officer's Mistake of Law and the Fourth Amendment
The government's reliance on Cashman is misplaced however, because Cashman involved an officer's possible mistake of fact, not a mistake of law. In the case before us, the officer's mistake was one of law. Relying on Lopez-Soto and Lopez-Valdez, the Defendants argue that under the Fourth Amendment, an officer's mistake of law cannot provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop.
. . . .
In Lopez-Valdez, an officer stopped the defendant for a broken taillight. The plastic cover of the taillight was broken, but the bulb itself was intact. 178 F.3d at 284-85. However, because of a previous case regarding the same statute ten years earlier, the Fifth Circuit noted that "no well-trained Texas police officer could reasonably believe that white light appearing with red light through a cracked red taillight lens constituted a violation of traffic law." Id. at 289. Therefore, the traffic stop was not "objectively reasonable." Id. at 289 n. 6. In addition, the Fifth Circuit held that *308 the good-faith exception to the exclusionary rule should not be extended to cover an officer's mistake of law. Id. at 289.
United States v. Chanthasouxat, 342 F.3d 1271, 1276-78 (11th Cir.2003). As Chanthasouxat makes clear, there is a significant difference between a crack in a taillight cover, which could never constitute a violation of the law, and a cracked windshield, which may constitute a violation of the law, depending on the circumstances of the crack. Courts must give "great deference" to the judgment of trained law enforcement officers and keep in mind that "an officer's mistaken assessment of facts need not render his actions unreasonable because what is reasonable will be completely dependent on the specific and usually unique circumstances presented by each case." Chanthasouxat, 342 F.3d at 1276-77. It would be nearly impossible to require that police make an accurate assessment of which cracks in the windshield pose a risk to safety when each car is traveling at highway speeds. Instead, if the officer sees a crack in a windshield that he or she reasonably believes may pose a safety risk or impairs the driver's vision, the officer is clearly permitted to stop the vehicle in order to ascertain the risk.[16] The question is not whether after stopping the vehicle and observing it on close inspection, the officer still believes that the crack could pose a safety risk or obstructs the driver's view.
Moreover, reasonable statutory construction dictates that the requirement of section 316.2952 for a windshield includes that the windshield be in good repair so that the driver can see out of the vehicle. This is the very reason that section 316.2952 requires a device to keep the windshield cleared from moisture and for windshield wipers. In order to safeguard the user of the motor vehicle, as well as passengers and pedestrians, the provisions of section 316.610 allow police officers to stop cars that do not appear to be in good repair or may be unsafe. Obviously, a motor vehicle's windshield, which is integral to the safe operation of the vehicle, is included within the equipment to which section 316.610(1) refers. Any interpretation of the statutory scheme which equates air conditioners or radios to windshields is simply a strained and unreasonable construction of the statute, as should be recognized by any driver of a motor vehicle.
I cannot agree with Judge Northcutt's assertion in his dissent in the Second District's decision that "Florida law did not prohibit Hilton to drive with a cracked windshield." 901 So.2d at 162. I do not believe his analogy to the cracked taillight in Doctor is correct. There is a significant difference as to whether a cracked taillight can be considered a danger, as opposed to a cracked windshield. As a driver and user of the public streets and highways, I know I do not want another vehicle with a cracked windshield to be on the public highways and streets, endangering me, my family, friends, or anyone else, not to mention endangering the safety of the occupants of the vehicle in question. I conclude that this is the reason that the Legislature gave police officers the power to stop a vehicle whose equipment is not in proper repair. A windshield is clearly within such equipment.
*309 In sum, I would hold that the overwhelming majority (eleven to two) of the en banc Second District was correct in its decision in the present case and would likewise approve the decisions of three of the other four district courts that have decided the issue. In fact, after its Burke decision, even the Fourth District reached a similar result, holding:
Section 316.610(1) expressly gives a police officer the authority to require the driver of a vehicle to stop and submit the vehicle to an inspection if the officer has reasonable cause to believe that the vehicle is "unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair" (emphasis added). Thus, the legislature clearly did not limit the authority of the police to only those cases in which the equipment created some immediate or heightened level of risk. See Hilton v. State, 901 So.2d 155, 157 (Fla. 2d DCA 2005) ("By necessary implication, the stop of a vehicle is proper even if the equipment violation does not create an unduly hazardous operating condition."). A stop is lawful under section 316.610 where the vehicle reasonably appears to have an equipment violation. See, e.g., State v. Snead, 707 So.2d 769, 770 (Fla. 2d DCA 1998) (holding that stop was reasonable where officer had probable cause to believe that appellee's taillight and brake light were inoperable).
Schuck, 913 So.2d at 71. For all of the above reasons, I would approve the decision of the Second District in this case.
CANTERO and BELL, JJ., concur.
NOTES
[1] Hilton ultimately was not charged with being a convicted felon in possession of a firearm.
[2] Officer Harrison testified that he and Sena observed the crack as Hilton drove by their stopped police cruiser. Officer Sena testified that they observed the crack while driving behind Hilton.
[3] In addition to the aforementioned statutory analysis, this Court in Doctor stated that it would "not allow officers to get around the fourth amendment's mandate by basing a detention upon a pure pretextual stop. The state must show that under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose." 596 So.2d at 446 (quoting Kehoe v. State, 521 So.2d 1094, 1097 (Fla. 1988)). In Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that the reasonableness of a traffic stop under the Fourth Amendment does not depend on the actual, subjective motivations of the individual officers involved in conducting the stop; rather, the only concern under the Fourth Amendment is the validity of the basis asserted by the officer involved in the stop. See id. at 813, 116 S.Ct. 1769. In Holland v. State, 696 So.2d 757 (Fla.1997), we recognized that Whren overruled the reasonable officer test "in favor of a strict objective test which asks only whether any probable cause for the stop existed." Id. at 759. However, Whren did not overrule this Court's utilization of principles of statutory interpretation to address whether section 316.610 of the Florida Statutes permits law enforcement officers to stop a vehicle for any type of malfunctioning equipment. See Hilton II, 901 So.2d at 163 (Northcutt, J., dissenting) ("Whren did not, and could not, abrogate the Florida Supreme Court's interpretation of a Florida statute. . . ."). To the extent that our decision today relies on Doctor, it is only with regard to the statutory analysis employed in that decision.

Contrary to the dissent's assertions, see dissenting op. at 305 n. 13, we solely rely upon Doctor for purposes of determining what constitutes a traffic violation under Florida law. Judge Northcutt correctly noted in his dissent in Hilton II that "Doctor controls the interpretation of subsection 316.610(1) notwithstanding the majority's refusal to recognize it." Hilton II, 901 So.2d at 164 (Northcutt, J., dissenting). Additionally, although the dissent relies upon State v. Burke, 902 So.2d 955 (Fla. 4th DCA 2005), review granted, 919 So.2d 436 (Fla.2006), to criticize our analysis, see dissenting op. at 305 n. 13, the dissent fails to acknowledge that the Fourth District in Burke concluded that Doctor was still good law with regard to the interpretation of Florida traffic statutes and adopted the reasoning of Judge Northcutt in his dissent. See Burke, 902 So.2d at 957.
[4] To the extent that the dissent contends that the law permits a traffic stop for any windshield crack, it is merely disagreeing with our interpretation of the interplay between sections 316.610 and 316.2952 and agreeing with the interpretation adopted by the Second District in Hilton II, an interpretation that we reject today.
[5] None of the parties in this proceeding contends that Hilton's vehicle was equipped in violation of chapter 316 or that Hilton did any act forbidden or failed to perform any act required under chapter 316.
[6] In Leon, the United States Supreme Court held that the Fourth Amendment exclusionary rule would not bar the use of evidence obtained by officers who were acting in reasonable, good-faith reliance on a search warrant that is ultimately found to be invalid. See 468 U.S. at 905, 104 S.Ct. 3405. In the instant case, the State has never claimed that if the officers made a mistake of law regarding whether Hilton's windshield crack constituted a traffic violation, the exclusionary rule should not apply.
[7] The dissent relies on Cashman for the proposition that "if the officer sees a crack in a windshield that he or she reasonably believes may pose a risk or impairs the driver's vision, the officer is clearly permitted to stop the vehicle in order to ascertain the risk." Dissenting op. at 308. It should be noted that the Wisconsin statute at issue in Cashman did not require that a windshield crack render a vehicle unsafe or impair the vision of the driver to constitute a traffic violation. Rather, the statute in Cashman prohibited a windshield from being excessively cracked or damaged. The Second Circuit explained:

Excessive cracking or damage is defined, inter alia, as "a crack inside, or which extends inside, the windshield critical area" or "cracks which extend into any area more than 8 inches from the frame." [Wis. Admin. Code] § Trans. 305.34(3)(a) and (b). The "windshield critical area" is in turn defined as "that portion of a motor vehicle windshield normally used by the driver for necessary observations to the front of the vehicle[,] . . . includ[ing] the areas normally swept by a factory installed windshield wiper system." Id. § Trans. 305.05(43).
216 F.3d at 586. The Second Circuit ultimately concluded that if the officer in Cashman reasonably believed that the windshield was excessively cracked or damaged as defined under the statute, the officer could constitutionally initiate a traffic stop of the vehicle, even if it was later determined that the windshield did not meet the definition of excessive cracking or damage. See id. at 587. Similarly, if an officer reasonably believes that a windshield crack renders a vehicle unsafe under section 316.610 of the Florida Statutes, the officer may constitutionally initiate a stop, and the propriety of that stop does not depend on whether the crack actually rendered the vehicle unsafe. Thus, even though the dissent relies on Cashman to support the claim that our decision today is inconsistent with federal law, closer inspection demonstrates that our decision is in complete accord with the analysis in Cashman.
[8] Cf. State v. Burke, 902 So.2d 955, 956 (Fla. 4th DCA 2005), review granted, 919 So.2d 436 (Fla.2006) (holding that State failed to meet burden of demonstrating that windshield crack posed a safety problem where "one of the detectives first testified that the windshield was badly cracked and that it was very noticeable, but on cross-examination he was unable to say where on the windshield the crack was located or the length, size or shape of the crack. . . . The second detective remembered that there was a crack in the windshield but he was unable to recall any other detail about it.").
[9] The dissent asserts that "this Court has consistently used this standard when applying the Whren analysis." Dissenting op. at 305 n. 14. However, the cases upon which the dissent relies for this proposition, Holland v. State, 696 So.2d 757 (Fla.1997), and Dobrin v. Florida Department of Highway Safety & Motor Vehicles, 874 So.2d 1171 (Fla.2004), did not involve issues of statutory interpretation with regard to the conduct that would constitute a traffic violation under Florida law. In Holland and Dobrin, it was absolutely clear as to the conduct which constituted a traffic violation (running a stop sign and failure to maintain a single lane). In the context of the precise issue that we must decide today, an issue which involves the interplay of statutory and constitutional law, this statement by the dissent is clearly subject to two different interpretations.
[10] Although the dissent contends that "the Howard decision does not indicate whether the trial court reviewed the stop to determine whether the crack demonstrated an objectively reasonable basis for an officer to believe that the vehicle violated the law," dissenting op. at 42 n. 12, the First District noted that the trial court in Howard construed not only Hilton I, but also "the evidence of record to require granting Appellee's motion to suppress." Howard, 909 So.2d at 392 (emphasis supplied). With regard to whether "a reasonable officer could have concluded that the crack rendered the windshield unsafe," dissenting op. at 304 n. 12, the First District does not indicate whether an officer testified about the appearance of the windshield, or if a safety concern prompted the traffic stop. On the other hand, the father of the defendant testified that "the location and size of the crack did not present an unduly hazardous condition that would endanger any person or property under the statute." Howard, 909 So.2d at 392. Moreover, with respect to whether the crack would have provided an objective basis for law enforcement officers to conclude that the vehicle was unsafe, the officer's actions speak volumes. According to the First District, a family member of the defendant was allowed to drive the vehicle home after the stop, and no citation was issued for the crack in the windshield. See id. at 390.
[11] As the Court explained, the three approaches were: (1) the "subjective test," which "attempts to inquire into the actual subjective reasons why the officer made the stop;" (2) the "objective test," which "ignores subjective matters and asks only if the officer was objectively authorized and legally permitted to make the stop in question without regard to any pretextual motive;" and (3) the "reasonable officer test," which "refines the objective test by also asking whether the stop  if occasioned by a minor infraction  was of a kind falling within the usual practices of the same or similar agencies." Id. at 1041-42.
[12] Contrary to the majority's statement, the Howard decision does not indicate whether the trial court reviewed the stop to determine whether the crack demonstrated an objectively reasonable basis for an officer to believe that the vehicle violated the law  instead, Howard indicates only that the trial court concluded that the crack "did not create a safety issue," 909 So.2d at 392, and hence under the Second District's panel decision, Hilton I required it to grant the motion to suppress. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992) (holding that a trial court is bound to follow the decision of a district court on the same point of law, absent any inter-district conflict). Again, it is important to recognize the difference in standards between a trial court determining whether there was a violation in fact (i.e., that the vehicle was unsafe) and whether a reasonable officer could have concluded that the crack rendered the windshield unsafe. The First District in Howard recognized this distinction on the basis of the en banc decision in Hilton II.
[13] The majority also relies on Doctor, although it asserts that it uses this case solely in relation to its decision on statutory construction. But as the Fourth District noted in Burke, whether Doctor is still good law in respect to an objective basis versus reasonable basis for a traffic stop is at the heart of the issue here. That Doctor is no longer controlling on this issue is the key to a proper analysis. In this case, the trial court below clearly found that the testimony established the officers observed the crack before stopping the vehicle and that the crack constituted an "objective basis" for the stop. The majority reverses the trial court's ruling because the trial court made no findings "with regard to whether the crack in the windshield rendered Hilton's vehicle unsafe." This does not follow Whren and Dobrin, in which the issue to be reviewed is whether the crack would provide an objective reason to stop the vehicle and inspect the windshield as the First District correctly held in Howard.
[14] The majority contends this statement of the issue is "ambiguous." Contrary to such characterization, however, this Court has consistently used this standard when applying the Whren analysis. See Holland, 696 So.2d at 759 ("When applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question."); Dobrin, 874 So.2d at 1174 ("The correct test to be applied is whether the particular officer who initiated the traffic stop had an objectively reasonable basis for making the stop.") By attempting to rephrase the relevant question, the majority is failing to adhere to this Court's precedent in Dobrin and Holland in which this Court set out the relevant issue. The majority attempts to analyze whether, after the stop, there could be a determination that the crack violated the law, as opposed to whether the seven- to eight-inch crack in the windshield was an objective basis upon which to stop the vehicle so that the officer could determine whether the crack made the vehicle unsafe.
[15] Moreover, I find the majority's complicated statutory construction to not fit with the evident statutory intent. I conclude that the statute intends for equipment required by the statute, including windshields, to be in "proper condition and adjustment," and when the equipment does not meet this standard, a traffic officer can cite the driver for the equipment violation under section 316.610. Pursuant to section 361.6105, the person cited can mitigate the civil fine by getting the defect corrected. As the Fourth District wrote in Schuck:

Section 316.610(1) expressly gives a police officer the authority to require the driver of a vehicle to stop and submit the vehicle to an inspection if the officer has reasonable cause to believe that the vehicle is "unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair" (emphasis added). Thus, the legislature clearly did not limit the authority of the police to only those cases in which the equipment created some immediate or heightened level of risk.
Schuck, 913 So.2d at 71.
[16] In fact, in Cashman, a case to which the majority also cites, the Seventh Circuit found that a crack which was almost the same length as the crack at issue here was "substantial" and could support an officer's reasonable belief that it constituted "excessive cracking." See Cashman, 216 F.3d at 587. Although excessive cracking of a windshield may not always render a car unsafe, it does provide an officer with a reasonable basis to believe that the car may be unsafe.